UNITED STATES of America, Appellee,

v.

Cleveland JOHNSON, also known as Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Roy WILLIAMS, also known as Low, Appellant.

UNITED STATES of America, Appellee,

v.

Johnny Ray BUTLER, also known as Johnnie Lee Burton, also known as Bonnie, Appellant.

UNITED STATES of America, Appellee,

v.

Christopher SCOTT, also known as Henry Johnson, also known as Henry Wilson, also known as Pony Tail, Appellant.

UNITED STATES of America, Appellee,

v.

Errol SKEETE, also known as Steven Anderson, also known as Steven Mason, also known as Steven Carter, also known as Steville, Appellant.

---

UNITED STATES of America, Appellee,

v.

Marcel HARRIS, also known as Taco, also known as Tyrone Bryant, also known as Tony McLaurin, Appellant.

Nos. 93–3046, 93–3048, 93–3050, 93–3054, 93–3110 and 93–3116.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1994.

Decided July 11, 1994.

David Stickman, Omaha, NE, argued, for appellant Cleveland Johnson.

W. Russell Bowie, Omaha, NE, for appellant Roy Williams.

Deborah D. Cunningham, Omaha, NE, argued, for appellant Johnny Ray Butler.

James R. Kozel, Omaha, NE, argued, for appellant Christopher Scott.

George T. Babcock, Omaha, NE, for appellant Errol Skeete.

William F. Eustice, Omaha, NE, for appellant Marcel Harris.

David A. Bybee, Washington, DC, argued, for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Johnny Ray Butler, Christopher Scott, Roy Williams, Marcel Harris, Cleveland

Johnson, and Errol Skeete (collectively, the defendants) appeal the district court's [1] judgment following a jury trial convicting the defendants of conspiring to distribute cocaine base (crack). In this consolidated appeal, the defendants claim multiple bases for reversal. Having considered all claims, we affirm.

## I. BACKGROUND

The government indicted the defendants for participating in a crack distribution conspiracy between September 1987 and May 1989. At trial, the government offered evidence that Butler and Scott set up a crack distribution ring in Omaha, Nebraska and recruited Ivory Mitchell [2] and Skeete to run a twenty-four-hour-per-day crack house. Further evidence indicated that Butler and Scott provided Mitchell and Skeete with the cocaine, collected the proceeds from the sales, and monitored the sales. The crack house apparently serviced several hundred people each day.

Mitchell, testifying for the government, claimed that Butler and Scott employed an array of street dealers. According to Mitchell, the street dealers occasionally would receive their supply of crack from Skeete and Mitchell at the crack house and give the proceeds of their sales directly to Skeete and Mitchell for conveyance to Butler and Scott.

The government offered further evidence that Scott, Butler, and Harris, utilizing Western Union money transfers, sent the proceeds from the drug deals to individuals in California. The evidence indicated the money transfers were made by the defendants using multiple aliases and ranged in value from $200 to $7000.

The grand jury returned a twenty-five-count indictment against the defendants on January 15, 1992. The defendants were found guilty of conspiring to possess with the intent to distribute cocaine in violation of 21

U.S.C. § 841(a) (1988). Butler and Scott were found guilty of knowingly engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1988).[3] Butler, Scott, and Harris were also found guilty of money laundering.

Butler and Scott received life sentences. Harris, Williams, Cleveland Johnson, and Skeete were sentenced to 204, 236, 336, and 360 months respectively. All defendants timely appealed.

## II. DISCUSSION

### A. Pre–Indictment Delay

■ Scott, joined by all defendants except Harris, argues that the district court erred when it denied his motion to dismiss the indictment due to pre-indictment delay. In short, Scott claims the thirty-month delay between the termination of the conspiracy and the indictment violated his due process rights.

"Pre-indictment delay will be sufficiently 'oppressive' to warrant dismissal of an indictment where the delay was unreasonable and substantially prejudicial to the defendant in the presentation of his case." *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir.), *cert. denied*, 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986). Scott alleges the thirty-month time lapse between the termination of the conspiracy and the indictment prejudiced his defense because had it not been for the delay, he would have located additional witnesses to corroborate his account that gambling, and not drug dealing, was the source of his copious amounts of cash.[4] In support of his due process claim, Scott also argues the district court improperly credited the government's testimony that the indictment was delayed due to the ongoing investigation involving leads to follow and verify.

---

1. The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

2. Mitchell pleaded guilty prior to trial.

3. Because the conspiracy-to-distribute count is a lesser included offense to the continuing-criminal-enterprise count, the district court set aside

Butler and Scott's jury verdict on the conspiracy-to-distribute count.

4. Similarly, defendants argue that Cleveland Johnson's and Williams's motions to dismiss should have been granted because they also lost accessibility to witnesses and evidence.

■ The defendants' due process claim must fail because, without considering the reasonableness of the delay, the defendants have failed to establish actual and substantial prejudice resulting from the delay. *Id.* at 1291–92. The defendants bear the burden of proving prejudice resulting from the pre-indictment delay. *Id.* at 1289. Substantial prejudice cannot be established with the mere "possibility of prejudice inherent in any extended delay: that memories will dim, witnesses will become inaccessible, and evidence will be lost." *United States v. Marion,* 404 U.S. 307, 326, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). The defendants' allegations fall far short of establishing actual, let alone substantial, prejudice. Hence, we affirm the ruling of the district court.

## B. *Batson* Challenge

■ The defendants argue that their Fourteenth Amendment right to equal protection was violated by the government's use of peremptory challenges to exclude potential jurors on the basis of race. Basing their argument on the Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the defendants contend that the government eliminated three of the potential jurors because of their race.

■ The district court found the defendants established a prima facie case under *Batson* because the government challenged both of the black members of the main jury, thus raising an inference of discrimination. We review a district court's rulings on *Batson* claims under the clearly erroneous standard. *United States v. Brooks,* 2 F.3d 838, 840 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1117, 127 L.Ed.2d 427 (1994). Once a prima facie case is established, we must determine whether the government's explanation for the challenge is race neutral, and, if so, whether the defendants have shown that the proffered reason is pretextual. *See id.* *Ultimately,* we must decide whether the defendants have borne their burden of proving purposeful discrimination. *Id.*

The district court held the challenges were legitimate and nondiscriminatory, relying on the government's explanation that two of the jurors had associations with some of the co-conspirators and the third juror was inattentive or asleep during much of the voir dire. The district court found that these explanations for the challenges were race neutral and showed no evidence of pretext. We hold that the district court's ruling was not clearly erroneous. Thus, the defendants' Fourteenth Amendment right to equal protection was not violated by the government's use of its peremptory challenges.

## C. 21 U.S.C. § 841 and U.S.S.G. § 2D1.1

■ The defendants challenge the constitutionality of 21 U.S.C. § 841[5] and U.S.S.G. § 2D1.1[6] as applied to them. Specifically, they argue that as applied, § 841 and § 2D1.1 disparately impact upon blacks in the prosecution and sentencing of crack distribution offenses. According to the defendants' argument, black offenders committing crack offenses are unfairly receiving substantially longer sentences than white offenders committing cocaine-powder offenses.

The defendants wisely do not contend that Congress or the Sentencing Commission had a discriminatory purpose at the time of the enactment of either § 841 or § 2D1.1. *See, e.g., United States v. Lattimore,* 974 F.2d 971, 975 (8th Cir.1992) (holding that no evidence supports a discriminatory motive in crafting the extended crack penalties), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993). Instead, the defendants attempt to distinguish their cases from our prior decisions by arguing that Congress and the Sentencing Commission have since reaffirmed the statute and guidelines, thus evidencing a discriminatory purpose. *But see United States v. Maxwell,* 25 F.3d 1389, 1396–97 (8th Cir.1994) (rejecting an equal protection challenge to the crack penalties based upon their continuing enforcement);

---

**5.** Section 841 provides penalties for the distribution of cocaine base. 21 U.S.C. § 841 (1988).

**6.** Section 2D1.1 provides the guideline sentences for offenses involving the distribution of drugs. U.S.S.G. § 2D1.1 (Nov. 1992).

*accord United States v. Willis,* 967 F.2d 1220, 1225 (8th Cir.1992).

We cannot agree. The defendants rely upon, as proof of discrimination, statistics evidencing a disparate impact upon black offenders distributing crack cocaine as compared to white offenders distributing cocaine powder. " 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of ... invidious racial discrimination.' " *Arlington Heights v. Metropolitan Hous. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (quoting *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* The defendants have offered no evidence that Congress or the Sentencing Commission have allowed either § 841 or § 2D1.1 to remain in effect to further a racially discriminatory purpose. As there were legitimate reasons for Congress to adopt the current crack penalties, *see Lattimore,* 974 F.2d at 975–76 ("Congress was reacting to the dramatic appearance of crack on America's streets and the violent impact crack would have upon the drug trade in the United States"), we will not infer a discriminatory purpose in the maintenance of these penalties. *See Maxwell,* 25 F.3d at 1396–97; *see also McClesky v. Kemp,* 481 U.S. 279, 298–99 & n. 21, 107 S.Ct. 1756, 1771 & n. 21, 95 L.Ed.2d 262 (1987) (holding that statistical evidence of the disparate impact of the death penalty on blacks is not sufficient to find a discriminatory purpose in the maintenance of the capital punishment statute). We therefore hold that § 841 and § 2D1.1 were not unconstitutionally applied to the defendants.[7]

### D. Motions to Suppress

■ The defendants challenge the district court's denial of their motions to suppress evidence. We review the district court's rulings on motions to suppress under the clearly erroneous standard. *See United States v. Henry,* 763 F.2d 329, 331 (8th Cir.1985).

### 1. The Eppley Airport Stop

■ Cleveland Johnson was stopped at the Eppley Airport by police officers, handcuffed, and taken to the airport security office, where he consented to a strip search. Cleveland Johnson was stopped because the police received an anonymous tip indicating that Johnson and his companion would be carrying cocaine. The tip accurately named Cleveland Johnson, described his female companion in great detail, and gave Cleveland Johnson's flight number and passenger information.

Cleveland Johnson contends the stop was an arrest without probable cause and thus all evidence flowing from it should be suppressed. The government contends the stop was a mere *Terry*-type detention. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court held that Cleveland Johnson's seizure was an arrest, *see Dunaway v. New York,* 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979), *with* probable cause, *see Illinois v. Gates,* 462 U.S. 213, 245–46, 103 S.Ct. 2317, 2335–36, 76 L.Ed.2d 527 (1983), and thus denied the motion to suppress. We agree with the district court that there was probable cause to arrest Cleveland Johnson: The tip was sufficiently detailed and corroborated. *See id.* at 244–45, 103 S.Ct. at 2335 ("It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale.") (internal quotes and citation omitted). We affirm the denial of Cleveland Johnson's motion to suppress evidence flowing from this stop.

### 2. 5625 Northampton Boulevard, Apt. B–31 and the LaQuinta Motel

■ Cleveland Johnson argues the searches conducted by the police at 5625 Northampton Boulevard, Apt. B–31 (the Apartment) and the LaQuinta Motel (the Motel) violated 18 U.S.C. § 3109 (1988) and were not supported by probable cause. Both searches were conducted pursuant to state-

---

7. Butler and Scott argue that 21 U.S.C. § 848 (1988) was unconstitutionally applied to them. Because their argument hinges upon a finding

that § 841 was unconstitutionally applied to the defendants, our holding disposes of this claim.

issued no-knock search warrants. Section 3109, a federal statute generally precluding no-knock entries, is thus inapplicable. *See United States v. Moore*, 956 F.2d 843, 848 (8th Cir.1992) (proper question is whether the state-issued no-knock warrant complied with Nebraska law and the Fourth Amendment).

■ Further, we hold that the district court's findings that the warrants were supported by probable cause were not clearly erroneous. The Apartment warrant was based upon the corroborated information of a confidential informant, while the Motel warrant was based upon a police investigation, a citizen's report, and other circumstantial evidence fitting a hotel/motel profile for drug traffickers. We thus affirm the denial of the motion to suppress the evidence seized from the Apartment and the Motel.

### 3. Vehicle Stops

■ Cleveland Johnson was stopped twice by the police in his vehicle. He alleges that both stops violated his Fourth Amendment rights and thus evidence flowing from them should have been suppressed. Specifically, Cleveland Johnson claims that the police lacked reasonable articulable suspicion for the stops. As to the September 8, 1988 stop, the district court found that Cleveland Johnson's car lacked license plates. As to the November 9, 1988 stop, the district court found that both police officers on the scene articulated a valid reason for the stop: either travelling at an excessive speed through an intersection or an improper lane change. The district court found no evidence of pretext. These findings were not clearly erroneous. Because "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle," *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991), we affirm the denial of the motion to suppress evidence flowing from these stops.

### 4. Holiday Inn

■ Harris's Holiday Inn room was searched pursuant to warrant, as was his person. Harris contends the warrants were not supported by probable cause, and thus evidence flowing from the searches should have been suppressed.

The police received a tip from an off-duty police officer that Harris and his companions registered at the Holiday Inn with Los Angeles addresses, paid for their rooms in cash, placed telephone calls to California, and refused room-cleaning services. Such characteristics fit an Omaha Police Division hotel/motel profile for drug traffickers. The police consequently placed surveillance outside Harris's room.

The surveillance officer observed one of the room occupants exit the room three times, look in all directions, and, after the third exit, climb on the roof to retrieve a white plastic bag. The occupants of the room then ordered a taxicab. The surveillance officer, after observing the room occupants depart in the taxicab, summoned two other police units and pulled the cab over. After one of the cab occupants attempted to run from the police as he was being frisked, the three cab occupants, including Harris, were then transported to the police station.

Harris argues that the affidavits supporting the search warrants were tainted by information gained from the period of detention. In short, he argues that the police lacked reasonable suspicion for the taxicab stop, and thus the "unconstitutional" seizure tainted the subsequent searches. The district court, however, found that "[s]hortly after the individual retrieved the package from the roof and took it into the hotel room, all three individuals came out of the hotel room together and entered the taxi cab.... [A]t that time based on the activities already observed there was probable cause to arrest all three individuals." Add. at 71. We agree, and affirm the district court's denial of the motion to suppress.

### E. Bill of Particulars

■ Cleveland Johnson argues that the district court's denial of his motion to admit the government's bill of particulars from another conspiracy (Prior Bill of Particulars)

prejudiced his ability to present his defense.[8] In July 1989, Cleveland Johnson was indicted as a member of another drug-distribution conspiracy, and the government in the course of that case submitted the Prior Bill of Particulars. Cleveland Johnson was dismissed from that indictment in April 1990, immediately before jury selection in this case.

Cleveland Johnson asserts that the Prior Bill of Particulars should have been admitted as evidence that the government took an earlier position inconsistent with its position in this case. The district court found that the Prior Bill of Particulars alleged essentially the same conduct as the government charged in the current conspiracy and that the government's earlier position was not inconsistent with its current position. We review the district court's rulings on the admissibility of evidence for an abuse of discretion. *United States v. Layne*, 973 F.2d 1417, 1421–22 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993). Because no facts alleged in the Prior Bill of Particulars were inconsistent with the charge in the instant case, *cf. United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) (inconsistent prior bill of particulars should have been admitted into evidence), we hold that the district court committed no abuse of discretion when it refused to admit this evidence.

### F. Gang Testimony

The government's first witness in its case-in-chief was Keith Johnson, an unindicted coconspirator and member of the Crenshaw Mafia Bloods gang (the Bloods). Keith Johnson testified generally about the business of drug trafficking, the Bloods, and gang membership, and specifically about the associations between the defendants. The defendants make two arguments challenging Keith Johnson's testimony. First, they argue that the district court erred when it failed to hold a hearing pursuant to Federal Rule of Evidence 104 to determine whether Keith Johnson was qualified to testify as an

expert witness. The district court, instead, made its evidentiary ruling based upon foundational testimony given before the jury. The defendants further argue that Keith Johnson's testimony regarding gangs and gang activities should have been excluded pursuant to Federal Rule of Evidence 403 because any probative value of the testimony was substantially outweighed by its prejudicial effect.

The district court did not abuse its discretion when it failed to hold a separate hearing regarding the admissibility of Keith Johnson's testimony.

> Rule 702 mandates that the district court act as 'gatekeeper' for the admission of novel scientific evidence. Before admitting ... expert testimony, the court must conclude, pursuant to Federal Rule of Evidence 104(a) that the proposed testimony constitutes (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.

*United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir.1993) (footnote omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 734, 126 L.Ed.2d 697 (1994). Here, the district court made the preliminary determination required by Rule 104. It, however, made that determination based upon Keith Johnson's foundational testimony before the jury. We hold the district court did not err in making its determination in this manner.

Moreover, the district court properly allowed Keith Johnson to testify as an expert on drug trafficking, relying upon Keith Johnson's extensive experience in the business of drug trafficking, evidenced by six years setting up various drug distribution centers in different cities. Again, Federal Rule of Evidence 702 permits a district court to allow such testimony if "scientific, technical, or *other specialized knowledge will assist the trier of fact to understand the evidence* or to determine a fact in issue." Fed.R.Evid. 702 (emphasis added).[9] Thus, when deter-

---

8. Johnson never specified what his theory of defense would have been, nor did he proffer a jury instruction to the court regarding his defense.

9. The defendants allege that the district court "treated" Keith Johnson as an expert on gang-related activities. Although we agree that the government was allowed to offer Keith Johnson's testimony on gang colors, code language, signs,

mining the admissibility of expert testimony, the relevant inquiry is whether Keith Johnson's testimony would be "helpful" to the jury's understanding of the evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993) ("[A]n expert's testimony [must] both rest[ ] on a reliable foundation and [be] relevant to the task at hand."). We hold that Keith Johnson's testimony was helpful to the jury: The jury's understanding of the conspiracy was aided by a global understanding of drug distribution networks, particularly in light of the various roles the defendants played in the conspiracy.[10]

■ The defendants argue the district court abused its discretion when it allowed Keith Johnson to testify to certain gang-related activities, claiming that the proffered testimony was substantially more prejudicial that probative. *See* Fed.R.Evid. 403. In this context, " 'unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis." *Id.* advisory committee's note. Thus, we examine Keith Johnson's gang-related testimony to determine whether it created an undue tendency to suggest a decision on an improper basis.

Keith Johnson gave considerable testimony regarding (1) his background in drug trafficking; (2) the Omaha cocaine distribution system and set-up; (3) his California connections with several of the defendants; (4) his first-hand knowledge that some of the defendants were involved in either distributing, cooking,[11] or fronting cocaine;[12] (5) his past and current gang associations; (6) the relationship between his gang, the Bloods, and other gangs, specifically the Crips; (7) his knowledge of, and how he ascertained, the

gang associations of the various conspiracy members; and (8) his association and recruitment of Cleveland Johnson.[13] Keith Johnson's testimony served to establish the historical, geographical, and business connections the defendants had with each other.

■ We agree that a defendant may not be convicted of a drug crime through his association with a club or group "known" to be involved in drug trafficking. *See United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir.1991) ("the jury could not disregard the entire theme of the trial: guilty by association"). But, although Keith Johnson's testimony linked four of the defendants with gangs, it fell far short of establishing that they were guilty of drug trafficking by association. Specific and circumscribed evidence of gang association may be necessary in a trial to show "the nature and extent of [the defendants'] association, which in turn bears on whether they conspired." *United States v. Sparks*, 949 F.2d 1023, 1026 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992); *accord United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir.1990) (evidence in government's case-in-chief of gang association necessary to establish a joint venture between the defendants).

Keith Johnson's testimony was replete with specific details about the individual defendants' associations either with each other or with the drug trafficking trade. His testimony also included evidence that he, Cleveland Johnson, Scott, Harris, and Williams were involved in gangs. However, this evidence was *not*, as was the case in *Roark*, the entire theme of the trial, much less a substantial theme of Keith Johnson's testimony. Because there was significant probative value to Keith Johnson's gang-related testimony—

---

and affiliations, this testimony supported and helped to explain his testimony regarding the behavior and associations of drug traffickers.

**10.** In a drug distribution conspiracy trial, as we have here, a jury is presented with voluminous facts connecting the defendants and their alleged "conspiracy-related" activities. To understand these connections and their relationship, it is "helpful" for the jury to understand how drug distribution rings are organized and how the various associations between the members are initiated and maintained.

**11.** Cooking is the process of converting cocaine powder to cocaine base.

**12.** Fronting cocaine is a consignment of the cocaine to a street seller.

**13.** Keith Johnson testified that Scott and Harris were fellow Bloods, while Williams and Cleveland Johnson were Crips.

it served to clarify the connections between some of the defendants—and it did not substitute for evidence of actual participation in the drug distribution ring, we hold that the evidence was not substantially more prejudicial than probative. The district court did not abuse its discretion in admitting this testimony into evidence.

### G. Additional Evidentiary Issues

We review a district court's decision to admit or exclude evidence under a deferential standard: abuse of discretion. *Layne*, 973 F.2d at 1421–22. "[A]bsent a clear and prejudicial abuse of discretion," the district court's ruling will be affirmed. *Id.* The defendants allege the following evidentiary errors: the admission of (1) Western Union records, (2) hearsay statements, (3) evidence of prior drug trafficking, and (4) photographs.[14]

### 1. Western Union Records

 The district court permitted the government to admit Western Union money transfer applications (MTAs), along with other Western Union records, for the purpose of proving the money laundering counts. The defendants[15] challenge the admission of the MTAs as a business record because the forms were filled out partially by nonemployees and thus were "untrustworthy." The government responds that the business record exception to the hearsay rule, *see* Fed. R.Evid. 803(6), does not require that the record be filled out by an employee of the business. We disagree with the government's characterization of the business record rule, but we nevertheless affirm the ruling of the district court.

"If the source of the information ... [is] an outsider to the chain producing [the] ... business record, rule 803(6) *by itself* does not permit admission of the information provided by the outsider." *Grogg v. Missouri Pac. R.R.*, 841 F.2d 210, 214 (8th Cir.1988) (emphasis added). Because "[i]f ... the supplier of the information does not act in the regular course [of business], an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Fed.R.Evid. 803(6), advisory committee note. The MTA requires senders to fill out their name, address, telephone number, the amount of money, and the name of the individual to whom the money is to be sent. After the sender fills out this preliminary information, the Western Union agent then completes the remainder of the form.

Because the senders, identified as Scott, Skeete, Harris, and Butler, frequently used aliases on the MTAs, the government offered expert testimony, lay testimony, eyewitness identification, and handwriting exemplars to establish that the defendants were the actual senders of the MTAs. The government established an adequate foundation, *see* Fed. R.Evid. 901(b)(1)–(3), upon which the jury might find that the signatures were those of defendants Scott, Skeete, Harris, and Butler. *See United States v. Black*, 767 F.2d 1334, 1342 (9th Cir.) (Rule 901 requires that the district court admit evidence if " 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification' ") (citation omitted), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985).

As the admission of a party-opponent, that portion of the Western Union MTAs alleged-

---

14. Several other evidentiary rulings are challenged by the defendants, all of which we find to be wholly without merit.

Skeete argues the district court erred when it failed to allow him to inquire into Ivory Mitchell's ability to identify Skeete's handwriting and to cross-examine Mitchell regarding allegations that Skeete had accused Mitchell of being a homosexual. We find no merit to these claims. *See* Tr. at 778 (handwriting exemplars given to Mitchell on cross); Tr. at 752–55 (Mitchell was cross-examined outside the presence of the jury

regarding Skeete's accusations and Skeete's attorney decided not to pursue the matter further).

Challenging the admission of evidence seized from a Chevrolet Nova pursuant to a warrant, Williams and Johnson contend the government failed to disclose its use of this evidence. We find no merit to this claim because the government's exhibit list, provided to counsel and the court before trial, plainly lists the contents of the Nova as an exhibit.

15. All defendants except Cleveland Johnson and Williams make this claim.

ly completed by the defendants themselves was not hearsay. *See* Fed.R.Evid. 801(d)(2) (admissions of party-opponents are not hearsay). Thus, the remainder of the Western Union MTAs, as business records prepared in the regular course of business, present no hearsay problem. *See Grogg*, 841 F.2d at 214. Such a case as we have here, where the business record is in part completed by a party/defendant, does not present the hearsay problems of a business record completed by or with information supplied by a nonparty/nonemployee. *Cf. Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir.1991) ("Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person."). We find the MTAs presented no hearsay problem and were properly admitted into evidence by the district court.

## 2. Joanie Johnson's Statements

Scott contends the district court committed reversible error by allowing Keith Johnson to testify that his wife told him Scott supplied her with cocaine. The district court admitted this testimony conditionally pursuant to Federal Rule of Evidence 801(d)(2)(E). The rule states:

> **(d) Statements which are not hearsay.** A statement is not hearsay if—
>
> . . . .
>
> The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed.R.Evid. 801(d)(2)(E). Scott argues that the government failed to satisfy its burden of proving that Joanie Johnson was one of Scott's coconspirators and thus the statement was inadmissible hearsay.

To admit Joanie Johnson's statements pursuant to Rule 801(d)(2)(E), the government must have established by a preponderance of the evidence that Joanie Johnson was a coconspirator. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). We hold that the government satisfied this burden. Keith Johnson testified that his wife helped him in, and was equally knowledgeable about,

his Omaha "business" and that she knew and did business with Scott. This testimony alone was sufficient to establish by a preponderance of the evidence that Joanie Johnson was one of Scott's coconspirators.

## 3. Drug Trafficking Outside the Scope of the Conspiracy

The district court allowed the government to offer testimony showing that Scott, Skeete, and Cleveland Johnson were involved in drug trafficking during time periods outside the scope of the conspiracy. Scott, Skeete, and Cleveland Johnson argue the district court erred when it permitted this testimony to be admitted pursuant to Federal Rule of Evidence 404(b). The district court allowed this evidence to be admitted—accompanied by a cautionary instruction—for the limited purpose of finding intent, knowledge or absence of mistake. *See* Fed.R.Evid. 404(b). The district court admitted the evidence, not to prove propensity which is prohibited by Rule 404(b), but rather for purposes explicitly allowed by Rule 404(b). We do not find the admission of this evidence to have been an abuse of discretion.

## 4. Photographs

During the direct examination of several of the government's witnesses, the witnesses were shown different types of photographs of the defendants: mug shots, 8 X 10 photographs, and photographs obtained during various searches showing the defendants together, sometimes with cash, guns, pagers, and cellular phones. The defendants contend that the photographs were improperly admitted because they were not relevant, were not properly authenticated, were more prejudicial than probative, or were overly cumulative.

The defendants failed to object to the admission of the mug shots. We thus review the mug shot claim under the plain error standard. *United States v. Bohr*, 581 F.2d 1294, 1299 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). The government argues that the mug shots were properly admitted because they were an essential link between a particular set of

fingerprints and a particular defendant. Moreover, the government did not mention the mug shots after their initial introduction into evidence. In light of the particular need for the mug shots and the circumscribed manner of their introduction, we refuse to invoke the plain error rule. *See id.* at 1298.

■ In support of the admission of the photographs, the government argues that the photographs either showed an association between the defendants and the instruments of drug trafficking or helped the jury to identify the individual defendants.[16] "[W]e must give substantial deference to the district court's decision on the admissibility of evidence, and we will not find error unless the district court clearly abused its discretion." *May v. Arkansas Forestry Comm'n,* 993 F.2d 632, 637 (8th Cir.1993). After examining these photographs, we find no abuse of discretion.

### H. Sufficiency of the Evidence to Sustain Butler's Conviction

■ Butler, who was sentenced to a term of life imprisonment for violating 21 U.S.C. § 848, challenges the sufficiency of the evidence sustaining that conviction. When reviewing the sufficiency of the evidence, "we examine the evidence in the light most favorable to the government." *United States v. Patterson,* 886 F.2d 217, 218 (8th Cir.1989). "[T]he government is given the benefit of any reasonable inferences drawn from the evidence." *Id.*

■ To establish a violation of § 848, the government must prove a felony violation of the narcotics laws that is part of a continuing series of violations in concert with at least five other individuals over which the defendant has a management or supervisory position and the receipt of substantial income from the enterprise. *United States v. Roley,* 893 F.2d 992, 993 n. 3 (8th Cir.1990). Butler contends that the government failed to prove beyond a reasonable doubt that he was a supervisor, manager, or organizer of at least five individuals. We disagree.

■ The management element of § 848 is liberally construed. *United States v. Montanye,* 962 F.2d 1332, 1344 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). The government's burden is to prove that Butler's influence over another individual caused that individual to obey his instructions, directions, or terms. *Id.* Among other evidence, the government offered proof that Butler recruited Mitchell; supplied drugs to Mitchell, Skeete, Williams, Cleveland Johnson, and Harris; leased the crack house; and collected the cash from the drug sales. In light of this evidence, we hold that a reasonable jury could have found that Butler was an organizer, supervisor, or manager of this group of individuals.

### I. Sentencing Issues

■ Two sentencing issues are raised on appeal. Both lack merit. The defendants contend the district court erred when it failed to grant a downward departure for "a factor not adequately taken into consideration by the Sentencing Commission," Cleveland Johnson Br. at 38, the disparate crack/powder penalties. We may not review this claim. *United States v. Evidente,* 894 F.2d 1000, 1004 & n. 5 (8th Cir.) (holding that failure-to-depart claims based upon factors not adequately taken into consideration by the Sentencing Commission are not reviewable), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). We further hold that when the district court increased Cleveland Johnson's and Williams's offense levels by three points for their role in the offense, *see* U.S.S.G. § 3B1.1(b), its finding that Cleveland Johnson and Williams were managers or supervisors in the enterprise was not clearly erroneous. *See United States v. Schwarck,* 961 F.2d 121, 123 (8th Cir.1992) (holding that evidence that defendant bought cocaine from suppliers, resold the cocaine to distributors, and shared in the profits was sufficient to sustain an upward adjustment pursuant to § 3B1.1(b)).

---

16. The defendants used multiple aliases. Because the aliases were used interchangeably with the defendants' real names in front of the jury, the photographs helped to identify the relevant defendant.

### III. CONCLUSION

We affirm the judgment of the district court.

