# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3445

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Tracy Payne-Owens

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 23, 2016
Filed: January 4, 2017

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

A jury found Christopher Payne-Owens guilty of possession of a firearm by a
felon and unlawful drug user, see 18 U.S.C. § 922(g)(1), (3), and the district court[1]
sentenced him to 63 months in prison. Payne-Owens filed this timely appeal. He

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for
the Southern District of Iowa.

contends the district court erred by allowing the government to present evidence of his gang affiliation and by rejecting his combined motion for a new trial or judgment of acquittal. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND[2]

In January 2014, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating Payne-Owens and obtained a search warrant to access his Facebook account. While reviewing his profile, ATF agents found two pictures of interest from November 2012. In the first photo, entitled "Bout that life," Payne-Owens posed with what looked to be a bandolier of ammunition around his head, and he held up four fingers—a gang sign associated with the Four Corner Hustlers, an offshoot of the Chicago-based Vice Lords gang. In the second photo Payne-Owens had what appeared to be a .45-caliber 1911-style handgun in his waistband and again raised the four-finger sign. Shortly after posting the pictures Payne-Owens sent two private Facebook messages to a friend, which included telling the friend to "See mi new pic big 45 on mi hip."

Payne-Owens was subsequently indicted for unlawful possession of a firearm and ammunition under § 922(g)(1) and (3). He pled not guilty, arguing there was no proof that the gun or ammunition was real because neither artifact was recovered. Instead, the government planned to introduce circumstantial evidence that suggested the items were real, including: Facebook posts by Payne-Owens where he threatened general gun violence in the context of his involvement with the Four Corner Hustlers gang; testimony to explain the four-finger sign, who the Four Corner Hustlers are, and the various slang words in the Facebook messages; and a threatening Facebook exchange between Payne-Owens and another individual that apparently stemmed from a gang dispute about whether the other was a "real" or "fake" gang member.

---

[2]"We recite the facts in the light most favorable to the jury's verdict." United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006).

The parties filed competing motions in limine regarding the evidence that revealed Payne-Owens's gang ties, and after a hearing the district court deemed the evidence admissible to the extent it provided context for "the circumstances surrounding the alleged crime" and suggested the gun and ammunition were, in fact, real.

At trial, the government called two witnesses. First, an ATF firearms expert testified that, although he could not state with absolute certainty the gun was real, the picture was consistent with a .45-caliber handgun like the one Payne-Owens referenced in the post-picture messages. Second, the ATF agent in charge of the case spoke about Facebook posts made by Payne-Owens, which were then admitted into evidence. As put by the district court, these Facebook statements by Payne-Owens evidenced his "desire to acquire a firearm, ability to help others acquire a firearm, and willingness to use a firearm against other people." But the district court was also aware that some of the evidence and testimony "explicitly referenced gang activity," so the district court verbally instructed the jury to consider the gang references only for the "real specific purpose" of determining "whether the firearm and ammunition were real and whether the defendant on trial here had a motive to possess [a real gun] and nothing else."

Payne-Owens moved for acquittal at the conclusion of the government's case, and the district court declined to rule on the motion immediately. See Fed. R. Crim. P. 29(a)-(b). Payne-Owens did not offer any additional evidence. During closing arguments, the government again mentioned Payne-Owens's boastful Facebook statements about being a *real* gang member, unlike the *fake* gang member he taunted and threatened, to suggest the pictures show a "real gun and real ammunition because that's what you pose with when you're a real Four Corner Hustler from Chicago." The jury then received its written instructions—including one regarding how to assess

evidence that referenced his gang membership[3]—and found Payne-Owens guilty of possessing a real firearm, but not ammunition. The district court rejected his combined motion for a new trial or judgment of acquittal and sentenced him to 63 months in prison. Payne-Owens appeals, challenging the district court's determinations as to the evidentiary issue and the sufficiency of the evidence.

## II. DISCUSSION

### A. Evidence of Gang Membership

Payne-Owens first argues the district court abused its discretion by allowing the government to present evidence that revealed and related to his gang affiliation. In making this argument on appeal, Payne-Owens relies on Federal Rule of Evidence 404(b)(1), which provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We review a challenged Rule 404(b) decision for abuse of discretion and "reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998).

As the district court recognized, not all evidence relating to a defendant's prior bad acts is barred by Rule 404(b). One reason such evidence may be admissible is because "Rule 404(b) applies only to extrinsic, not intrinsic, evidence." United States

---

[3]The written instruction reinforced the prior oral instruction: "[Evidence of gang membership] can only be used to help you determine whether the firearm and ammunition . . . are real, not replicas, and whether the defendant had a motive to possess a real firearm or ammunition. You cannot infer guilt . . . from the mere fact of gang membership alone. . . . If you do not find the statements related to gang activity are attributable to the defendant, you do not believe that the defendant was involved in gang activity, or you do not find these statements helpful in determining whether the firearm or ammunition depicted are real or that the defendant had a motive to possess a firearm or ammunition, you should disregard this evidence."

<u>v. Young</u>, 753 F.3d 757, 770 (8th Cir. 2014). Evidence "'is considered intrinsic when it is offered'" to contribute to the narrative of the story and provide context for the charged crime—a non-propensity purpose. <u>Id.</u> (quoting <u>United States v. Johnson</u>, 463 F.3d 803, 808 (8th Cir. 2006)). Also, by its own terms Rule 404(b) does not prohibit evidence of prior bad acts when it is offered for a different non-propensity purpose, like to suggest the defendant has motive to commit the crime. <u>See</u> Fed. R. Evid. 404(b)(2).

We agree with the district court that the disputed evidence was offered for reasons that do not implicate Rule 404(b)'s prohibition. To begin, the generic and fleeting testimony by the government's witness about the Four Corner Hustlers, the significance of the hand gesture, and defining the slang words used in the Facebook messages contributed to the narrative of the charged crime. The district court correctly characterized this evidence as intrinsic because it helped "provide a total picture." The fact that such testimony referenced Payne-Owens's gang ties did not make it inadmissible under Rule 404(b). <u>See</u> <u>United States v. Sills</u>, 120 F.3d 917, 920 (8th Cir. 1997) (affirming admission of testimony about gang-related graffiti on a shotgun because "'the jury probably could not have understood the meaning'" of it otherwise (quoting <u>United States v. Sparks</u>, 949 F.2d 1023, 1026 (8th Cir. 1991) (approving admissibility of officer's expert testimony on "the meaning of the graffiti and hand signs depicted in . . . pictures," relating them to gang affiliation))). Furthermore, the Facebook messages and posts that referenced gang membership included threats of violence that evidenced Payne-Owens's motive to possess a real gun.[4] The district court did not have to require the government to sanitize the

---

[4]For example, one string of Facebook posts said: "And i heard u . . . plotting on big bro dont lose ur head. . . . ima just up da tool and go to work on u . . . . u better be ready to die . . . me in mi shortys end wars." The government's witnesses clarified that "up da tool" means "to possess or get a firearm," and "me in mi shortys end wars" refers to how he and his fellow gang members "end disputes violently." It was at this point the district court issued a lengthy verbal instruction, telling jurors to

-5-

messages and posts before allowing them into evidence because motive is a permissible purpose under Rule 404(b)(2).

Payne-Owens nonetheless contends the district court erred given our decision in United States v. Roark, where the gang-related evidence was "inherently and unfairly prejudicial." United States v. Roark, 924 F.2d 1426, 1434 (8th Cir. 1991); see Fed. R. Evid. 403 ("[A] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."); Fed. R. Evid. 403 advisory comm. notes to 1972 amendment ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis."); see also United States v. Johnson, 28 F.3d 1487, 1497-98 (8th Cir. 1994) (assessing the admissibility of gang-related evidence under Rule 403). We recognize, as did the district court, "[g]eneral evidence as to gang culture, aimed at simply establishing a violent or lawless culture, is often unduly prejudicial and can be irrelevant."

In Roark, we ordered a new trial where the government had made a "relentless attempt to convict" the defendant based on his affiliation with a gang, and "the jury could not disregard the entire theme of the trial: guilty by association." Roark, 924 F.2d at 1432-34. We gave great weight to the district court's own expressions of regret for allowing the evidence, which effectively "made a perfect case for ordering a new trial." Id. at 1432. In hindsight the district court acknowledged the evidence "did not go really to the guilt or innocence really of the defendant in this lawsuit," but rather "to the general reputation" of the gang in its entirety and essentially made it "an uncharged defendant."[5] Id. at 1433-34.

_____

consider the evidence "on the issue of whether the firearm and ammunition were real and whether the defendant on trial here had a motive to possess and nothing else."

[5]The district court in Roark realized its mistake too late when it admonished the prosecutor: "Now, you've elected to try, at least partially the Hells Angels Motorcycle Club, which was not necessary in this case. . . . What I'm kicking myself about is,

-6-

Payne-Owens cites United States v. Street only in passing, but in that case we found the district court abused its discretion in allowing gang evidence. See United States v. Street, 548 F.3d 618, 629-33 (8th Cir. 2008). In Street, the government elicited testimony—which spanned twenty pages in the record—with the admitted "main purpose" of "illustrat[ing] the violent, lawless propensities of outlaw motorcycle gangs" generally. Id. at 629. We noted the factual similarities to Roark, and expressed concern that "most of the gang reputation evidence had no discernible connection to the murder charges." Id. at 632. In acknowledging "there is no blanket rule disallowing evidence of gang affiliation," we outlined commonalities in cases where such evidence is allowed. Id. To begin, the defendant is usually a gang member himself. See id. Most cases allowing such evidence also "concern the *mere fact* of a defendant's gang membership" rather than "sanction a wide ranging inquiry into the generic criminality and violent dispositions of gangs." Id. And many times "mention of gang membership is allowed [because] it is generally an *unavoidable incident* of presenting other permissible evidence." Id. None of these circumstances were present in Street, and we held admission of the gang testimony was "excessive, unduly prejudicial, and in great part completely irrelevant to the charged offenses." Id. at 633.

On the other side of Roark and Street are cases like Johnson, 28 F.3d at 1497-98, Sills, 120 F.3d at 919-20, and Sparks, 949 F.2d at 1026, which more closely resemble the facts at hand. In Johnson, we affirmed the admission of "considerable testimony" about the defendant's "past and current gang associations" and "the relationship between his gang . . . and other gangs." Johnson, 28 F.3d at 1497. But "this evidence was *not*, as was the case in Roark, the entire theme of the trial, much less a substantial theme of [the] testimony." Id. There was "significant probative value to [the] gang-related testimony" in that it spoke to the key issue at trial: whether

---

under Rule 403 I could have refused it, and by applying hindsight it's obvious that that's what I should have done." Id. at 1433.

there was a drug conspiracy.  Id.  In Sills, the defendant denied knowing there was a shotgun in his car.  See Sills, 120 F.3d at 920.  A witness testified for the government that the defendant was a gang member and the graffiti on the shotgun "indicated animosity towards several rival gangs."  Id. at 919.  We considered references to the defendant's gang relevant to show motive and opportunity to knowingly possess a gun.  See id. at 920.  We held the district court did not abuse its discretion since the district court issued a limiting instruction and, "[a]lthough the government's evidence 'linked [the defendant] with gangs, it fell far short of establishing that [he] w[as] guilty . . . by association.'"  Id. (third and fourth alterations in original) (quoting Johnson, 28 F.3d at 1497).

Having reviewed the trial record here, we are convinced the district court did not abuse its discretion.  Here, unlike in Roark, the government did not relentlessly attempt to convict Payne-Owens by arguing guilt by association; rather the government tailored its use of evidence that referenced his gang ties to merely provide context for Payne-Owens's *own* words about his overlapping personal involvement with guns and gangs, and also to show he had motive to possess a real gun or ammunition (even if that alleged motive derived from his gang involvement).  Such context and proof of motive is probative as to whether the gun or ammunition were real, the primary issues at trial.  The district court twice gave the jury detailed limiting instructions on how to use (or not use) the disputed evidence.  Although limiting instructions cannot always cure unfair prejudice, see Roark, 924 F.2d at 1433-34, we have repeatedly said they reduce the risk of it, see, e.g., United States v. Franklin, 250 F.3d 653, 659 (8th Cir. 2001); Sills, 120 F.3d at 920.

Of concern to us are statements made by the government during closing arguments: "This [was] a real gun and real ammunition because that's what you pose with when you're a real Four Corner Hustler from Chicago.  Do you really think that a real Four Corner Hustler from Chicago who's calling out other Iowa gang members for being fake is going to go to the Internet and post a photograph of himself with a

replica firearm and some dummy ammunition? No." Though closer, we do not consider this to be reversible error. The statements went beyond suggesting mere guilt by association by referencing Payne-Owens's own statements. See Roark, 924 F.2d at 1433-34. The prosecutor's comments were fleeting and the district court issued two detailed limiting instructions. See id. at 1434 ("One statement, damaging but isolated, is easily remedied through a limiting instruction."). We afford the district court broad discretion in controlling closing arguments. See United States v. Martin, 777 F.3d 984, 996 (8th Cir. 2015) ("[A] conviction will be reversed for an improper statement only for some clear abuse."). Payne-Owens did not object to the closing statement at trial. See id. ("When an appellant has failed to object to an argument in the district court, its propriety is reviewed only for plain error and reversed 'only under exceptional circumstances.'" (quoting United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008))). We do not exercise our discretion to reverse. See Davis, 534 F.3d at 914 (standard of plain error review).

### B. Sufficiency of the Evidence

Payne-Owens also contends there was insufficient evidence to convict him, and therefore the district court erred in denying his motion for a judgment of acquittal. We review the sufficiency of the evidence de novo. See United States v. Bowers, 638 F.3d 616, 619 (8th Cir. 2011). "All reasonable inferences are accepted that support a jury verdict. The verdict will be upheld if any interpretation of the evidence could lead a jury to find guilt beyond a reasonable doubt." Id. (citation omitted).

The gun Payne-Owens was found to have possessed was never recovered or offered into evidence, and the government's expert could not state with absolute certainty that the gun in the picture was real without physically inspecting it. Payne-Owens relies on these facts to propose that the jury must have entertained some reasonable doubt as to whether the gun was real or fake. But we have previously found evidence of gun possession sufficient when the gun was not recovered, provided there was circumstantial evidence the gun was real. See, e.g., id. (finding

eyewitness testimony from non-experts, video footage, and a confession sufficient); United States v. Stenger, 605 F.3d 492, 504 (8th Cir. 2010) (surveillance videos, eyewitness testimony, and an unsworn admission to a third party); United States v. Garcia-Hernandez, 530 F.3d 657, 662-63 (8th Cir. 2008) (eyewitness testimony only). These cases establish "[t]he mere possibility that the weapon could have been fake does not preclude a reasonable jury from finding that the gun was real; the government is not required to disprove the theoretical possibility that the defendant carried only a sophisticated toy." Stenger, 605 F.3d at 504 (citations omitted).

Like the cases above, the government here presented sufficient circumstantial evidence in lieu of the actual firearm: there was a picture of Payne-Owens with what appeared to be a gun; a nearly contemporaneous text message where he described it as a "big 45"; testimony from an expert that the photographed gun possessed attributes consistent with a .45-caliber pistol; text messages that evidenced Payne-Owens's apparent ability and desire to obtain a gun; and back-and-forth messaging between Payne-Owens and another individual where Payne-Owens threatened violence. "The jurors were free to reach a logical conclusion based on the totality of the evidence presented at the trial[], and a reasonable jury could have found" that Payne-Owens possessed a real firearm in the picture he posted to his Facebook page. Id.

## III.   CONCLUSION

Because we conclude the district court did not abuse its discretion in allowing evidence of gang affiliation to the extent it provided context or suggested Payne-Owens had a motive to possess a real gun, and because there was sufficient evidence to support the jury's finding he did possess a real gun, we affirm.

_____