# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3649

_____

United States of America

*Plaintiff - Appellee*

v.

Antuan Rochelle Gaines

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 10, 2017
Filed: June 23, 2017

_____

Before RILEY,[1] Chief Judge, GRUENDER, Circuit Judge, and SCHREIER,[2] District Judge.

_____

RILEY, Chief Judge.

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

Antuan Gaines appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), arguing (1) the district court[3] abused its discretion in admitting gang-related evidence, and (2) the evidence introduced at his jury trial was insufficient to find him guilty. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In the early afternoon of November 4, 2013, Little Rock, Arkansas, plain clothes police officers observed a person-of-interest in a homicide investigation standing in a parking lot with a group of men dressed in red and black attire. Due to a concern for safety, because the officers were aware of a recent increase in gang activity and the individuals' clothing indicated they might be members of a local gang, the officers called for uniformed backup. Several marked police cars responded. As Officer Charles Starratt approached the group, he saw one man, later identified as Gaines, make a motion toward the man's waist and then duck down out of the officer's sight next to a vehicle. Officer Starratt then heard "a metal on pavement sound." Gaines obeyed officers' commands to get on the ground, and while handcuffing Gaines, Officer Starratt spotted a handgun underneath the car next to which Gaines had been standing.

Gaines was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and proceeded to a jury trial in February 2016. Before trial, the government filed notice of its intent to present evidence of Gaines's "gang membership, and the fact that he was with several other members of the gang when he and three others were found in possession of firearms" and "[l]imited evidence regarding the homicide investigation" as "'relevant to multiple aspects of th[e] case: the overarching factual scenario at issue, [Gaines's] presence at the scene, and why

---

[3]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

he would have a [firearm].'" (Second and third alterations in original) (quoting United States v. Molton, 743 F.3d 479, 482 (7th Cir. 2014). The district court permitted the government to introduce limited evidence of Gaines's gang affiliation, but noted "any sort of expert taking the stand and giving a dissertation on gang life and the violence of gangs and the violence of this gang in particular, . . . at some point that becomes objectionable under 403." See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.").

Over Gaines's objection at trial, the district court allowed an expert witness to testify about Gaines's involvement in a local gang. Before this testimony, the district court instructed the jury to consider the evidence only as to Gaines's knowledge, intent, and motive in possessing the firearm.[4]

---

[4]The limiting instruction read to the jury was:

Ladies and gentlemen of the jury, I anticipate that you will hear evidence that Mr. Gaines is alleged to be affiliated with a gang. You may consider this evidence only if you unanimously find it more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt. If you find this evidence has been proved, then you may consider it to help you decide Mr. Gaines' knowledge, intent, and motive regarding the charges against him in this case. You should give it the weight and value you believe it is entitled to receive. If you find that this evidence has not been proved, you must disregard it.

Remember, even if you find that Mr. Gaines may have committed similar acts in the past, this is not evidence that he committed such an act in this case. You may not convict a person simply because you believe he may have committed similar acts in the past. Mr. Gaines is on trial only for crimes charged and you may consider the evidence of prior acts only on the issues that I have explained in this instruction.

The expert testified the local gang, Highland Park Pirus (HPP), is associated with the color red and included the parking lot where Gaines was arrested in its territory. The government had previously introduced photographs—to which Gaines did not object at trial—of the clothes Gaines was wearing the day of his arrest, including a knit cap with the initials HPP, and the expert witness testified this cap indicated Gaines was affiliated with the HPP gang. As part of the expert witness's testimony, the government attempted to introduce photographs of clothing items worn by individuals other than Gaines in the parking lot the day of his arrest that referenced the HPP gang, but the district court found these photographs unduly prejudicial. The government then introduced, over Gaines's objection, photographs of two of Gaines's tattoos that the expert witness also identified as associated with the HPP gang.

The expert witness went on to testify that members of street gangs like HPP are involved in illegal activity and possess firearms, but the district court sustained Gaines's objections to further testimony regarding why members of street gangs possess guns, and that the homicide the officers were investigating was gang-related.

In addition to the expert testimony linking Gaines to the local street gang, Officer Starratt testified he responded to the call for backup and, while approaching the group, Gaines caught his attention "[b]ecause he made a motion [Officer Starratt] would consider as a threat to [his] person." Officer Starratt testified he discovered the firearm underneath the vehicle after Gaines dropped out of sight next to the vehicle and Officer Starratt heard a "metal on pavement sound." While Officer Starratt testified "[t]here was another individual at the front of the car" near Gaines, he also testified no other individual was within reaching distance of the gun. No

---

A limiting instruction in the final jury instructions included substantially the same language.

officer testified to actually seeing Gaines with a firearm, and no physical evidence tied Gaines to the firearm recovered at the scene.

Gaines moved for a judgment of acquittal at the close of the government's case, which the district court denied. After the district court overruled Gaines's motion to exclude evidence of his potential witnesses' affiliation with the HPP gang, Gaines rested without introducing any evidence. The district court instructed the jury and included a second limiting instruction on the gang-affiliation evidence. The jury returned a guilty verdict. Gaines filed timely notice of appeal.

## II.    DISCUSSION
### A.    Gang-Related Evidence

Gaines argues the district court abused its discretion in overruling his objections to the introduction of evidence of Gaines's gang affiliation—namely, photographs of his gang-related clothing and tattoos and the explanatory expert testimony. See United States v. McKay, 431 F.3d 1085, 1093 (8th Cir. 2005) ("We review district court rulings on the admission of prejudicial evidence such as alleged gang affiliation for an abuse of discretion.").

"Evidence of gang membership is admissible if relevant to a disputed issue," United States v. Lemon, 239 F.3d 968, 971 (8th Cir. 2001), but not "if its purpose is solely 'to prejudice the defendant or prove his guilt by association with unsavory characters,'" United States v. Ellison, 616 F.3d 829, 833 (8th Cir. 2010) (quoting McKay, 431 F.3d at 1093). As we recently outlined in United States v. Payne-Owens, gang-related evidence is often admissible where "the defendant is . . . a gang member himself," the issues in the case "'concern the *mere fact* of a defendant's gang membership' rather than 'sanction[ing] a wide ranging inquiry into the generic criminality and violent dispositions of gangs,'" and the evidence "'is generally an *unavoidable incident* of presenting other permissible evidence.'" United States v.

Payne-Owens, 845 F.3d 868, 873 (8th Cir. 2017) (quoting United States v. Street, 548 F.3d 618, 632 (8th Cir. 2008)).

Gaines claims "though the government attempted to disguise the evidence as admissible [Rule] 404(b) evidence, the evidence was offered merely to prejudice Mr. Gaines and prove his guilt by association." See Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose."). Gaines argues any relevance of his gang affiliation was "substantially outweighed by the danger of unfair prejudice" when "the government went the 'guilty by association' route." See Fed. R. Evid. 403.

We have previously cautioned against the "relentless attempt to convict [a defendant] through his association" with a gang when the government "injected into the trial over defense counsel's objection" the gang's "general reputation for drug-related activities," and did so "merely to show that [the defendant] is a bad person and thus more likely to have committed the crime." United States v. Roark, 924 F.2d 1426, 1430-34 (8th Cir. 1991). But "[h]ere, unlike in Roark, the government did not relentlessly attempt to convict [Gaines] by arguing guilt by association." Payne-Owens, 845 F.3d at 874. Instead, in the government's words, the evidence of Gaines's gang affiliation was offered to "give[] context to the reason that the officers were there that day, the steps that they took that day, the reason that they stopped that day" and to establish Gaines's knowledge, intent, motive, or opportunity. Gaines's membership in the HPP gang provided important background for the officers' testimony of why they were in the area and called for uniformed backup to approach the men in the parking lot. The photographs of Gaines's gang-related clothing and tattoos were also probative of Gaines's motive to possess a gun "even if that alleged motive derived from his gang involvement." Payne-Owens, 845 F.3d at 874.

-6-

The government's expert witness also testified briefly about the HPP gang and Gaines's affiliation with them. Again, we find no reversible error. The expert informed the jury that Gaines's clothing and tattoos were indicative of gang membership, and we have repeatedly held explanatory evidence like this to be admissible. See, e.g., Payne-Owens, 845 F.3d at 872 (affirming admission of "generic and fleeting testimony" by an expert witness about hand signs and slang associated with a local gang); United States v. Sills, 120 F.3d 917, 920 (8th Cir. 1997) (affirming admission of testimony to aid the jury with the meaning of gang-related graffiti). The expert also testified about how, in his experiences, street gangs are involved in illegal activity and members often possess firearms. This is a bit more concerning. But the government and its witness then moved on, having only shared a well-known generality about gangs' involvement in illegal activities. These brief statements—situated within a limited amount of gang evidence we have already deemed admissible—do not tip the scales so much as to constitute an abuse of discretion or unfair prejudice that requires a new trial.

Any unfairly prejudicial effect of the gang-related evidence did not substantially outweigh its probative value. See Fed. R. Evid. 403. The majority of the testimony at trial focused on the officers' observations at the scene, and the government introduced limited evidence Gaines was affiliated with HPP, a far cry from the "extensive, prejudicial testimony concerning the violent tendencies and criminal dispositions of gangs in general and of [the local gang] in particular" we have previously found to be unduly prejudicial. Street, 548 F.3d at 631. The district court carefully considered each piece of gang-related evidence the government sought to introduce and balanced its probative value against its prejudicial nature, and we cannot say the result of this deliberate balancing was an abuse of discretion.[5]

---

[5]The district court was presented with a Catch-22 in ruling on the additional gang-related evidence the government sought to introduce. On one hand, allowing the expert witness to testify as to why gang members possess guns and present gang-related information about the homicide the officers were investigating would have

Granted, the probative value of the gang-related evidence was not strong, and the government risked turning the focus of the trial to Gaines's gang membership rather than his knowing possession of a firearm. Yet we cannot say "'the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct.'" United States v. Gant, 721 F.3d 505, 509 (8th Cir. 2013) (quoting United States v. Farish, 535 F.3d 815, 819 (8th Cir. 2008)). What may have developed into an unduly prejudicial effect of the gang-related evidence was mitigated by the district court's careful balancing of each piece of evidence and repeated cautions that the jury consider evidence of Gaines's gang affiliation only "to help [them] decide Mr. Gaines' knowledge, intent, and motive regarding the charges against him." See Payne-Owens, 845 F.3d at 874; McKay, 431 F.3d at 1093. By allowing the government to present evidence of Gaines's gang affiliation only as an important contextual explanation and as evidence of Gaines's motive to possess a firearm, the district court did not abuse its discretion.

## B.      Sufficiency of the Evidence

Gaines also contends the evidence was insufficient to establish he knowingly possessed the firearm. "To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must 'prove beyond a reasonable doubt (1) [the defendant] previously had been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) [the defendant] knowingly possessed a firearm, and (3) the firearm had been

---

made Gaines's gang membership more relevant—the background information would have provided more clarity on why Gaines's gang membership could motivate him to possess a gun and why the officers were interested in approaching the gang members in the parking lot. On the other hand, this evidence would have turned Gaines's gang membership into a significant theme of the trial and may have tipped the scales toward undue prejudice. The district court did not abuse its discretion in attempting to walk a careful line between allowing the government to introduce relevant evidence and ensuring Gaines was not unfairly prejudiced.

in or had affected interstate commerce.'"[6] United States v. Cowling, 648 F.3d 690, 700 (8th Cir. 2011) (quoting United States v. Johnson, 474 F.3d 1044, 1048 (8th Cir. 2007)). "We review sufficiency of the evidence claims de novo and reverse only if no reasonable jury could have found [the defendant] guilty." United States v. Daniels, 625 F.3d 529, 532 (8th Cir. 2010). Taking "the evidence in the light most favorable to the verdict and accept[ing] all reasonable inferences that can be drawn" from that evidence, we find the evidence sufficient. United States v. Griffith, 786 F.3d 1098, 1102 (8th Cir. 2015).

"'A defendant knowingly possesses a firearm if he has actual or constructive possession of it,'" United States v. Green, 835 F.3d 844, 852 (8th Cir. 2016) (quoting United States v. Wells, 469 F.3d 716, 719 (8th Cir. 2006)), but "[m]ere proximity . . . is insufficient to establish constructive possession." Cowling, 648 F.3d at 700. We agree with the government's assertion that "the evidence at trial proved more than mere proximity. Circumstantial evidence was presented . . . that Gaines removed the firearm from his waist and dropped it under a car before he could be arrested." As Gaines highlights, the gun was in a public area, no witnesses testified they saw Gaines holding the firearm, and no forensic evidence tied Gaines to the firearm. But one officer did testify he saw Gaines "make a motion toward the rear of the vehicle toward his waist" and duck out of sight, and then the officer heard "a metal on pavement sound" before discovering the firearm underneath the car next to where Gaines had stood. This is sufficient circumstantial evidence to support Gaines's conviction. Cf. United States v. White, 816 F.3d 976, 985 (8th Cir. 2016) ("[B]ecause 'a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence . . . knowledge is generally established through circumstantial

---

[6]Gaines stipulated at trial he was a felon and the government presented sufficient evidence at trial that the firearm charged in the indictment had been in or had affected interstate commerce. Gaines only challenges the sufficiency of the evidence to prove he knowingly possessed the firearm.

evidence.'" (quoting United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014) (omission in original)).

Gaines's contention the government's witnesses contradicted one another "so much so that a rational jury could *not* have found beyond a reasonable doubt that the evidence established that Mr. Gaines knowingly possessed the firearm" is unconvincing. "In reviewing the motion for judgment of acquittal . . . the court does not assess the credibility of the witnesses, because that is the province of the jury." United States v. Stewart, 854 F.3d 472, 475 (8th Cir. 2017). The relatively minor inconsistences between the officers' testimony—the number of people present in the parking lot, their proximity to one another, and what commands officers gave before Gaines's arrest—do not establish that no reasonable jury could have believed the major points of the officers' testimony.

## III. CONCLUSION

Because the district court did not abuse its discretion in admitting certain gang-related evidence and the evidence overall was sufficient to support Gaines's conviction, we affirm.

_____