# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-3727

_____

| | | |
|---|---|---|
| United States of America | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Luwana Latrice Walker, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |
| | * | |

_____

Submitted: October 10, 2002

Filed: April 11, 2003

_____

Before LOKEN,[1] BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

_____

[1]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

Luwana Latrice Walker was named in the first two counts of a twenty-three count indictment against twelve defendants. She was charged with one count of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 and one count of attempted possession with intent to distribute 1.1 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Walker moved to suppress the 1.1 kilograms of cocaine seized from an Express Mail package arguing the postal inspector lacked probable cause to inspect the package. The magistrate judge recommended that the district court deny the motion to suppress. The district court[2] adopted the recommendation and denied the motion. After a jury trial, Walker was convicted on both counts. She filed a motion for a new trial based on ineffective assistance of counsel. At Walker's sentencing, the district court denied the motion and sentenced Walker to 151 months in prison and five years supervised release. On appeal, Walker contends: (1) the postal inspector lacked probable cause to detain the package and subject it to a canine sniff; (2) the court should have suppressed the items seized from her apartment because the warrant was overbroad and not supported by probable cause; (3) she was denied effective assistance of counsel regarding her plea options; and (4) her sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000).

## I. Facts

Walker was affiliated with members of the Broadway Five Deuce Crips, a gang that was the subject of a long-term Drug Enforcement Administration investigation. The investigation revealed that Walker, in exchange for crack, allowed members of

---

[2]The Honorable James M. Rosenbaum, Chief Judge for the United States District Court for the District of Minnesota, adopting the report and recommendation of Magistrate Judge Franklin L. Noel, the United States Magistrate Judge for the District of Minnesota. Judge Rosenbaum presided at trial.

the gang to have packages of crack from California delivered to her St. Paul residence. The gang used Express Mail for the shipments.

A postal inspector stationed at the Los Angeles airport mail facility became suspicious of a package addressed to Tomeka Scott at Walker's address in St. Paul, Minnesota. It was later revealed that Tomeka Scott was an alias used by Walker. The package was a large U-Haul box with handwritten labels. It had been dropped off at an airport facility sixty miles from the sender's purported residence. The sender brought the package to the facility in a rental car, and paid the delivery charge in cash. Given these factors and based on his experience, the inspector placed the package in a separate bag, addressed it to United States Postal Inspector Alan Eklund in St. Paul, Minnesota, and routed it for St. Paul. The inspector in Los Angeles did not detain the package, but did alert Eklund that a package was coming to him in a special bag.

When the bag arrived in St. Paul, Eklund removed the package and inspected it. Eklund testified that in the course of his twenty-one years as a postal inspector, including nine in the narcotics division, he had seen "probably a hundred" U-Haul type boxes that contained narcotics. Eklund also testified that Los Angeles is known as drug source city where many narcotics packages originate. On this assessment, and the information provided by the Los Angeles postal inspector, Eklund requested a narcotics-sniffing canine to inspect the package. The package was placed in a room with other packages and the canine was brought into the room. The canine alerted to the package, indicating the presence of narcotics. Eklund then applied for and received a search warrant for the package. Officers opened the package and discovered cocaine in it. The officers then conducted a controlled delivery to the addressee: Tomeka Scott, 2000 West 7th Street, Apartment 209, St. Paul, Minnesota. Walker accepted the package as Tomeka Scott. A subsequent search of Walker's apartment yielded numerous pieces of false identification in her alias–Tomeka Scott.

## II. The Motion to Suppress

We first address Walker's contention that the district court erred in denying her motion to suppress the Express Mail package which contained the cocaine. Walker contends the postal inspector lacked the requisite reasonable suspicion to detain and inspect the Express Mail package. "We review the denial of a motion to suppress de novo but review the underlying factual determinations for clear error, giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002) (quoting United States v. Wheat, 278 F.3d 722, 725-26 (8th Cir. 2002)). "The determination of whether a government agent's suspicion is constitutionally reasonable is exceedingly fact specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be 'understood by those versed in the field of law enforcement.'" United States v. Demoss, 279 F.3d 632, 636 (8th Cir. 2002) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

It is clear under our precedent that when Eklund moved the package to a separate room for a canine sniff, the package was seized for Fourth Amendment purposes. See Demoss, 279 F.3d at 636-37. Having determined there was a seizure, we must decide whether there was a reasonable, articulable suspicion to support the seizure. It is well established that "[l]aw enforcement authorities must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for investigation." United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999). See also United States v. Terriques, 319 F.3d 1051, 1056 (8th Cir. 2003) ("A seizure will not violate the Fourth Amendment if the authorities have reasonable suspicion based on articulable facts that a package contains contraband . . . ." (quotation marks and citation omitted)); Demoss, 279 F.3d at 636 (holding that "seizure needed only to be supported by an objectively reasonable, articulable suspicion that the package contained contraband").

"Reasonable suspicion exists when 'an officer possesses a 'particularized and objective basis for suspecting that the package contains contraband, that is more than an 'inchoate and unparticularized suspicion or hunch.'" Terriques, 319 F.3d at 1056 (quoting Johnson, 171 F.3d at 603, in turn quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

The facts informing Eklund's decision to move the Express Mail package into a separate room are undisputed. The fighting issue is whether, taken together, these facts give rise to a reasonable suspicion. We believe they do. The Los Angeles postal inspector that forwarded the package to Eklund informed Eklund that the package had identifying characteristics that indicated the presence of contraband. The package was typical of those used by drug dealers for shipping drugs. The address labels were handwritten rather than pre-printed as used by most Express Mail customers. The package came from a narcotics source city. Payment for delivery of the package was made with cash. The package was delivered to the airport by an individual driving a rental vehicle. The vehicle was rented by an individual that lived 60 miles from the airmail facility. Based on this information, his own inspection of the package, and his twenty-one years as a postal inspector, including nine years as a narcotics officer, Eklund requested and scheduled a canine sniff to determine if the package contained contraband.

Our fact specific inquiry examines the totality of the circumstances that inform a law enforcement officer's determination of reasonable suspicion. See Terriques, 319 F.3d at 1056 ("In determining whether the inspector had reasonable suspicion, the court evaluates 'those circumstances as they would be understood by those versed in the field of law enforcement.'" (quoting Demoss, 279 F.3d at 636)). Each of the factors articulated by Inspector Ecklund, when considered alone, is consistent with innocent mail use. However, when those factors are viewed in the aggregate by a trained law enforcement officer, they give rise to the objectively reasonable suspicion needed to justify a canine sniff. See id. at 1057. See also Ornelas v. United States,

517 U.S. 690, 700 (1996) (in determining existence of probable cause, officer may draw inferences based on experience); Terriques, 319 F.3d at 1055 (reasoning that the officers' training and experience informed their knowledge of identifying characteristics of packages containing narcotics); United States v. Dennis, 115 F.3d 524, 533 (7th Cir. 1997) ("Here, admittedly, any one of the factors which the postal inspector articulated may be found in innocent mailings as well as packages containing contraband. However, the confluence of all of these factors in a single package when appraised by the postal inspector, an experienced narcotics investigator, amounted to reasonable suspicion that the Express Mail package may have contained contraband and justified the investigatory detention.").

We believe in this case Eklund's appraisal of the package was wholly consistent with our Fourth Amendment jurisprudence in this area. "Law enforcement officers are permitted to draw 'inferences and deductions that might well elude an untrained person.' Nevertheless, those inferences and deductions must be *explained*. Specifically, the Fourth Amendment requires an officer to explain *why* the officer's knowledge of particular criminal practices gives special significance to apparently innocent facts." Johnson, 171 F.3d at 604 (quoting Cortez, 449 U.S. at 417-18) (emphasis in original). Eklund's explanation of the relevance of the independently insignificant facts, in light of his experience, demonstrates the reasonable suspicion required under the Fourth Amendment. Compare DeMoss, 279 F.3d at 636 ("Taking into account Meyer's experience in the interdiction of packages containing illegal drugs, his collective observations of the 'Joshua Smith' package amounted to a sufficient basis for the objectively reasonably, articulable suspicion necessary to seize the package and conduct a canine sniff."), with Johnson, 171 F.3d at 604 (holding that agent failed to articulate how his experience informed his appraisal of the package in light of the Express Mail/narcotics profile and concluding there was no particularized and objective basis for suspecting the detained package).

### III.  Anticipatory Search Warrant

Walker contends the search warrant for her residence was not supported by probable cause because it failed to describe with particularity the places to be searched or the items to be seized.  "We review the district court's determination of probable cause under a clearly erroneous standard, and give considerable deference to the issuing judge's determination of probable cause."  United States v. Bieri, 21 F.3d 811, 815 (8th Cir. 1994).  "We affirm the district court's decision unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made."  Id.

"An anticipatory search warrant should be upheld if independent evidence shows the delivery of contraband will or is likely to occur and the warrant is conditioned on that delivery."  Id.  (citing United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993)).  "Probable cause exists when there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched."   Id. at 814.

The affidavit in support of the search warrant averred that an Express Mail package had been intercepted and was addressed to the location that was the subject of the search warrant.  The affidavit stated that the package was opened pursuant to a search warrant and found to contain over one kilogram of cocaine.  The affiant explained that he had reason to believe that items such as drugs, weapons, and drug paraphernalia would be present at the address, as well as other evidence relating to identification of the residents.  The affidavit also stated the officers' intent to make a controlled delivery of the package before executing the search warrant.

Walker argues that the presence of narcotics in the Express Mail package was insufficient to provide probable cause to search the entire home.  Walker contends there was a lack of any independent or corroborating evidence to suggest that illegal

evidence was likely to be found in Walker's apartment. Further, she argues that the government conducted no investigation to corroborate that anyone using the name Tomeka Scott lived at the address or that the apartment was used for drug trafficking beyond being used as an address to send a package.

The information contained in the affidavit, "along with [the officer's] averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, provided the issuing judge with a substantial basis for finding probable cause to search [the defendant's] residence." United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994). The quantity of drugs in the package indicated a distribution amount. Based on the officer's experience, it was reasonable to conclude the apartment may contain guns, money, and pagers, and thus it was appropriate to include those items in the list of items to be seized. See United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (noting the "close and well-known connection between firearms and drugs" (citations omitted)). It was also appropriate to include documents that might identify the owner or renter of the apartment to establish constructive possession of the Express Mail package. Accordingly, the anticipatory search warrant was supported by probable cause.

## IV. Ineffective Assistance of Counsel

Walker alleges that her trial counsel failed to communicate the government's plea offers to her.[3] We review a district court's factual findings in an ineffective

_____

[3] "We will consider [an ineffective assistance of counsel claim] on direct appeal only in those exceptional cases in which the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice." United States v. Santana, 150 F.3d, 860, 863 (8th Cir. 1998). In this case,

assistance of counsel claim for clear error and its conclusions of law de novo. United States v. Reed, 179 F.3d 622, 624 (8th Cir. 1999). "To establish ineffective assistance of counsel . . . the petitioner must show that [her] counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced [her] defense." Lawrence v. Armontrout, 900 F.2d 127, 129 (8th Cir. 1990) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 687.

Walker contends that her trial counsel never told her about a plea offer from the government. Apparently there were some discussions prior to trial regarding a plea agreement in which the government would drop the more serious charge, intent to distribute, in exchange for Walker pleading guilty to attempted possession. This offer was contingent on a successful proffer by Walker regarding her involvement with the Express Mail package. Walker refused to make this concession. After jury selection on the first day of trial, the government asked if Walker would plead to the package to avoid trial. At this point, Walker was the last of the twelve indicted defendants left for trial. Defense counsel conferred privately with Walker and then turned down the offer.

---

there is a fully developed record from the evidentiary hearing on Walker's ineffective assistance of counsel claim.

Assuming there was a plea offer,[4] Walker's own testimony discredits her allegations.  Walker testified in the evidentiary and sentencing hearing regarding the offer:

> Q. [By Mr. Kushner]: And what was, what did [Mr. Resnick] tell you about the offer when you were in his office [following jury selection]?
>
> A. He said that they [were] offering me a plea for my cooperation, and I don't know if I had to do 5 years or if I was going to get 5 years, I don't know exactly how it was, but I know 5 years was in it . . . ."

---

[4] The district court concluded that no plea offer had ever been made:
> The short version of the defendant's [ineffective assistance of counsel] claim is that  there was an offer, the terms of which have never been clearly delineated.  The prosecutor said that there were discussions, but this Court has worked with this prosecutor, as well as this defense lawyer, both of the defense lawyers who testified, on many occasions, and unless or until there's an offer in writing and that offer is conveyed and accepted there really is nothing binding, and you would essentially have me construct an offer, find that Mr. Resnick had not conveyed the offer, that had the offer been clearly conveyed it would have been accepted at a time when it was never made, and then essentially compel the government to accept the plea agreement which had never been agreed upon, and set aside a jury verdict and sentence the defendant as if she had been – there had been no trial, on the basis of an inchoate plea for which there was no adequate proffer.  That I think is a fair statement of the condition of the record and the wish that the defendant would have me do.  And the Court declines.

E.H. II at 66-67.

Evidentiary Hearing Transcript, Vol. I, at 26 (E.H. I).  Walker's sworn affidavit also refutes her argument:

> On June 26, 2000, after a jury was selected in my case, I returned to Mr. Resnick's office.  While there, Mr. Resnick told me that AUSA Paulsen had offered a plea under which I would face 5 years in prison if I agreed to cooperate with the Government.  Mr. Resnick said that he wanted the Government to offer a plea that would be under 5 years.  Based on Mr. Resnick's recommendation, I agreed to reject that plea offer and I left Mr. Resnick's office to go home.

Affidavit of Luwana Latrice Walker, Government's Brief, A-3, ¶ 5, E.H. II at 59-60.

Walker claims she changed her mind and tried to contact Mr. Resnick in an effort to accept the offer.  Walker claims she left a message for Mr. Resnick on his answering machine.  Resnick testified that he did not recall receiving a message from Walker stating that she wanted to accept the offer.  The only recorded message entered into evidence was one with Walker saying she wants to "take it all the way," and "let the jury decide," and concluding with "if you can convince one juror, then I'll walk."

Walker also contends that her counsel did not attempt to explain legal principles that were essential to making an informed decision.[5]  However, Walker's own testimony underscores that her attorney told her she could be responsible for the entire 1.1 kilograms in the package and that she appreciated the consequences.  The prosecutor asked Walker if she ever understood that "under the law you could, even

---

[5] The government argues that Walker's claim on this issue should not be considered because it is raised for the first time on appeal.  See United States v. Massey, 57 F.3d 637, 638 (8th Cir. 1995).  Because the record clearly refutes her claim, it is unnecessary to rely on the procedural bar.

if you felt responsible for the four ounces, you would still be held responsible for the whole package?" E.H. II at 59. In response to the prosecutor's question, she stated: "Maybe I misunderstood what he was telling me." E.H. II at 59. In that same line of questions, Walker then stated: "I was adamant I wanted this trial in the beginning because of the amount they charged me with." Examining all the testimony, the district court concluded that Walker was not credible: "The court finds the defendant to be only little credible when it comes to acknowledging her guilt in this case. That is entirely consistent with the behavior which she has shown from the beginning. She is, and has been willing, to make statements and change them as necessary to try and achieve what she perceives to be her ends." E.H. II at 67.

In sum, the record developed at the evidentiary hearing refutes Walker's claims. Walker's attorney explicitly communicated the initial outlines of the plea offers to her. He explained the charges against her and she appreciated the consequences of an adverse verdict. Walker turned down several opportunities to plead guilty to the lesser of the charges and elected to stand before a jury. After a thorough review of the record, we find no error in the district court's determination of the facts and its determination that the performance of Walker's attorney did not fall below the objective standard of reasonable competence. Because Walker failed to satisfy the first prong of the Strickland test for ineffective assistance of counsel, we need not proceed further in the Strickland analysis. See Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002) ("Having found his counsel's performance adequate, we need not address the issue of prejudice under the second prong of the Strickland test."). Accordingly, Walker's ineffective assistance of counsel claim fails.

## V. The Apprendi Issue

In Apprendi v. New Jersey, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Apprendi was decided on June 26, 2000. The jury in Walker's case was instructed on June 29, 2000. Because Walker did not request an Apprendi instruction, our review of Walker's Apprendi claim is limited to plain error. United States v. Butler, 238 F.3d 1001, 1005 (8th Cir. 2001). We find no Apprendi error, plain or otherwise, because Walker's sentence of 151 months did not exceed the 20-year statutory maximum for cocaine or crack cocaine offenses in their simplest form. As we concluded in United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000), "[t]he rule of Apprendi only applies where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict." Apprendi does not require a jury determination of the facts giving rise to a mandatory minimum penalty, nor does it require a jury determination of the sentencing guideline factors. Aguayo-Delgado, 220 F.3d at 933-34. Accordingly, Walker's Apprendi issue is without merit.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.