# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1276

_____

United States of America,      *
                              *

          Appellee,      *

                              *      Appeal from the United States

   v.                       *      District Court for the

                              *      District of South Dakota.

Naseem Y. Sirbel,         *

                              *         [PUBLISHED]

          Appellant.     *

_____

Submitted: Sept. 13, 2005
Filed: November 8, 2005

_____

Before ARNOLD, HANSEN, and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Naseem Y. Sirbel appeals his conviction on two counts of using the social security number of another. See 42 U.S.C. § 408(a)(7)(B). After a three-day trial, a jury convicted Sirbel on three counts of fraudulently using the social security number of another to obtain a South Dakota driver's license and identification card and to open accounts at two banks. After his conviction, the district court[1] granted Sirbel's

_____

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

motion for acquittal on the charge related to obtaining the driver's license and identification card, but denied his motion for acquittal regarding the bank accounts. Sirbel appeals the denial of his motion for acquittal on these two counts. We affirm the judgment of the district court.

## I.

Naseem Sirbel (Sirbel) and his brother Mohammed Sirbel (Mohammed) entered the United States from Jordan on March 12, 2004. Sirbel was born in Jordan in 1975 and entered the United States on a tourist visa. Mohammed is a United States citizen, having been born here when the Sirbel family lived in the United States in the early 1980s while their father, Yousef, attended graduate school. The Sirbel brothers traveled to Sioux Falls, South Dakota, where their sister lived. Both brothers had with them social security cards that Sirbel stated he had found in his deceased father's papers. The cards were two of the four that Sirbel said he had found, the other two being issued in the name of his father and mother. Sirbel stated that none of the four had been signed, that they all still had the stubs attached to them, and that he had not looked at or compared the numbers on them prior to coming to the United States.

On March 16, 2004, four days after arriving, Sirbel went to the local Social Security Administration office in Sioux Falls and spoke with John Huntington. Sirbel told Huntington he needed a social security card and number so that he could obtain a driver's license and open a bank account. Huntington reviewed the documents that Sirbel provided, his passport and visa, and told Sirbel that as a visitor he was not entitled to a social security number. Huntington also told Sirbel that he did not believe a number was necessary to open a bank account or obtain a driver's license. Huntington testified at the trial that Sirbel was asking to be issued a number, and that Sirbel did not provide a social security card or number to him on that day.

Later that day, Sirbel applied for a South Dakota identification card. When asked for his social security number on the application, Sirbel provided the number _ _ _-_ _- 5782[2] and signed the form, indicating that all the information he provided was true. Sirbel then gave the application, along with his passport, visa, international driver's license, and a social security card, to Todd Knudson, a driver's license examiner. When he began to verify the information, Knudson was notified by the Social Security Administration database that the name and date of birth provided by Sirbel did not match the information associated with the social security number. The name of the person it was issued to did not appear on Knudson's screen, only the fact that the name and number did not match. Knudson then asked Sirbel about the card, and Sirbel stated that it belonged to his father. When Knudson informed Sirbel he was retaining the social security card because it had not been issued to Sirbel, Sirbel objected and ultimately the local police were contacted. Shortly after their arrival the card was returned to Sirbel, who again applied for an identification card, based on the same application he had earlier filled out. Sirbel was issued a South Dakota identification card.

Sirbel had arrived in the United States with $20,000 in cash and wanted to open a bank account in Sioux Falls. On March 17, 2004, Sirbel and Mohammed went to the downtown Sioux Falls branch of Great Western Bank and attempted to open a bank account. Sirbel provided the South Dakota identification card he had obtained the day before and the same social security card. He told the bank officer that the social security card was not valid and that law enforcement did not like him to use it. He also stated that his name was just misspelled on the card but that it was his own number. Sirbel was told that a valid social security number was needed to open an account and that he would not be able to do so because the card was invalid.

---

[2]The first five digits contained on the card are intentionally omitted from this published opinion in order to prevent identity theft or other improper use of the social security number.

However, Mohammed was able to open an account and the $20,000 was deposited into the account he opened. Sirbel later became a joint account holder with Mohammed on this account.

On March 18, 2004, Sirbel again went to the Social Security Administration office, this time speaking with Vicky Hanf. Sirbel told Hanf that he and Mohammed were concerned that their social security cards appeared "fake" and that they wanted new cards issued. Hanf first reviewed Mohammed's card. She entered the number on the card into the NUMIDENT database, which contains identifying information attached to the number. The information provided by Mohammed matched the information in the database and he was approved for processing for a new card. Sirbel then gave the card he possessed to Hanf. When she entered the number on the card into NUMIDENT, the information did not match what Sirbel had provided regarding his name, date of birth, parents' names and other related information. Hanf was also concerned about inconsistencies in the card as to its physical characteristics. She requested that Sirbel provide his immigration and other documents to her. Sirbel replied that he did not have them with him and would bring them in the next day. He then left, but Hanf retained the social security card.

Sirbel returned to the office the next day and provided Hanf his passport, visa, and South Dakota identification card. Hanf informed Sirbel she could not issue a number to him because he was a tourist. As she was entering the social security number he provided her into the system, Sirbel informed her that his father's name would come up as the person it was registered to, but that it was in fact his number and the Social Security Administration had made the mistake. Hanf replied that this kind of error was impossible and that she was going to retain the card because it was not valid. Sirbel continued to tell Hanf he needed a social security number, but Hanf told him that because he was not eligible to work in the country, he could not be issued a number. She further told him that he did not need a number to open a bank account or obtain a driver's license. The situation had raised some concerns for Hanf

though, and she later spoke to Special Agent Jim Collingwood of the Social Security Office of Inspector General about Sirbel and the invalid card.

On April 12, 2004, Sirbel applied for a checking account at a Sioux Falls branch of US Bank. As part of the application process, Sirbel again provided the social security number that he had used previously. This number was used to check the financial history of the applicant, and when the bank manager did so, he unknowingly accessed the information for Sirbel's deceased father, Yousef. Relying on that information and finding no negative financial reports, the bank opened an account with Sirbel. Two days later, Sirbel went to a different branch of the Great Western Bank than he was at in March and applied for another checking account. He provided the same social security number to the bank, which also used it to check financial history reports. Great Western then also opened an account with Sirbel. However, during the application process, the bank employee noted that Sirbel acted "nervous" and "jittery" while speaking with her, enough so that she reported his behavior to the bank manager. At neither bank did Sirbel display a social security card, nor did he notify them that there were some problems associated with the number.

The next day Sirbel went to the driver's license examination station in Sioux Falls and applied for a South Dakota driver's license. He did not put any number in the blank requesting the applicant's social security number. He was subsequently granted a driver's license.

Agent Collingwood, who had been notified by Hanf about potential problems with the social security number and card in question, began an investigation in March 2004. He first looked into the origin of the card Hanf had confiscated, which carried the number _ _ _-_ _- 5782 and the name "Nassim Y. Sirbel." By entering the card's information into the NUMIDENT database, he also concluded that the information in the database and on the card did not match. He then turned to a second database,

ALPHADENT, which tracks all information assigned to a specific social security number. Collingwood entered Sirbel's date of birth and his name, along with different spellings and variations of his name, and determined that no number had ever been issued to Sirbel. The Social Security Administration later certified that the number in question had been issued to Yousef Sirbel in 1976, and that only one card had been issued by the agency.

Collingwood and an agent of the FBI interviewed Sirbel on May 21, 2004. During the interview, Sirbel stated that the first time he knew that something was wrong with the number he was using was when he applied for the South Dakota identification card. Sirbel told the agents that his card had been retained by the Social Security Administration because they were trying to verify it, and that as a visitor he was not allowed to have a number. He admitted to the agents that he had used the number to open a bank account at Great Western, and that he knew it was wrong to do so, but that he needed a place to keep his money. He did not tell them about his account at US Bank, his attempt to open an account in March at a Great Western Bank branch, or about Mohammed's account at Great Western Bank where the money had initially been deposited.

In June 2004, Mohammed was notified that his number was in good standing and that his information had checked out. Two weeks later, Sirbel received a letter notifying him that his South Dakota identification card and driver's license had been cancelled because a fraudulent social security number had been used in the application process. Sirbel returned the identification card and driver's license to the state and then took the letter he had received to Agent Collingwood. Collingwood told Sirbel he would look into the matter as part of his continuing investigation. After this meeting, Sirbel stated that he called his sister in Jordan and asked her to locate the social security card with his father's name on it and read the number to him. The number was the same as that which Sirbel had been using, and Sirbel stated that this

was the first time he became aware of that fact. Sirbel's sister sent the card to Sirbel, which he then turned over to Agent Collingwood.

In July 2004, Sirbel received a letter from Agent Collingwood which informed him that the social security card he had been using contained a number that had not been issued to him. The letter further stated that Agent Collingwood believed the cause might have been a clerical error that occurred in the 1970s and that he did not believe Sirbel had fraudulently intended to use the number to obtain a driver's license, as Sirbel was unaware the card was invalid at that time. The letter did not mention the bank accounts, and Collingwood testified at the trial that his opinion on the matter had changed after the July letter due to facts that he later uncovered in his investigation.

Sirbel was initially indicted in August 2004, and a superseding indictment was filed on October 20, 2004. The superseding indictment charged Sirbel with three counts of using a social security number in violation of 42 U.S.C. § 408(a)(7)(B), making it a crime for anyone who "with intent to deceive, falsely represents a number to be the social security account number assigned . . . to him . . . when in fact such number is not the social security account number assigned . . . to him." After the close of the evidence at trial, Sirbel moved for acquittal on all charges. The court denied the motions as to counts two and three, but took the motion under consideration as to count one, obtaining the driver's license and identification card. After the jury had convicted Sirbel on all three counts, the court held that the jury must have had a reasonable doubt about Sirbel's intent to deceive in relation to the driver's license and identification card and thus granted Sirbel's motion for acquittal on that count. However, the court upheld the jury's verdict on the other two counts and later sentenced Sirbel to 130 days in jail on each count, to be served concurrently.

## II.

We review a district court's "denial of a motion for acquittal by viewing the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences to be drawn from the evidence." United States v. Bolzer, 367 F.3d 1032, 1035 (8th Cir. 2004) (quoting United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996)), cert. denied, 124 S. Ct. 424 (2004). The conviction will be upheld "unless a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." Bolzer, 367 F.3d at 1035 (internal marks omitted). Essential elements can be proven by direct or circumstantial evidence. United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004). When making our determination, we are not to weigh the evidence or assess the credibility of the witnesses, as that is the job of the jury. Id.

The only element at issue here is Sirbel's intent to deceive or mislead. Sirbel contends that the government failed to prove that he intended to mislead anyone when he used the social security number to open the bank accounts because he had a good faith belief the number had been issued to him at the time. We respectfully disagree.

The jury was instructed that acting with intent to deceive meant acting with the purpose to mislead someone. However, the instructions also stated that it was not necessary for the Government to prove that anyone was in fact misled by the act. They were also informed that good faith is a complete defense to the crime if it is inconsistent with the intent to mislead. The court told the jury that a person who acts with honest intentions is not guilty of intentionally being deceitful and that in this case, the Government had to prove that Sirbel had knowingly and intentionally attempted to mislead another. It was within this framework of instructions that the jury evaluated the evidence before them. While there is some evidence and testimony from Sirbel that he was not made aware until July 2004, several months after the

accounts had been opened, that the number had not been issued to him, the weight and credibility to give this evidence and testimony was for the jury to decide.

We reject Sirbel's assertion that the evidence established only that Sirbel was in possession of a fraudulent card. He had been told in March by an employee at the Social Security Administration office that the number had not been issued in his name and that his card was invalid. An employee at the driver's license examination station told him that his name did not match that associated with the number and tried to confiscate the card. At the time he opened both bank accounts, the card had in fact already been confiscated by the Social Security Administration. There was testimony that Sirbel had told at least one person that the card was his father's, and there was also testimony that the card in question had some abnormalities and was "suspect." Sirbel had made statements that law enforcement did not want him using the card and that he was aware that there were some problems with it. All of this occurred prior to his opening the bank accounts. Based on the record before us, we find no error in the jury's determination that Sirbel was aware that the social security number was not his at the time he used it to open the bank accounts, and that he used the number with the intent to deceive or mislead another. When we view the evidence in a light most favorable to the verdict, it was not unreasonable for a jury to decide that Sirbel did in fact have the requisite intent to deceive, and we will not overturn the jury's verdict as to the bank account counts.

III.

Accordingly, we affirm the judgment of the district court.
_____