# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1482

_____

United States of America,

        Plaintiff - Appellee,

v.

Jeffrey Bordeaux,

        Defendant - Appellant.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of South Dakota

_____

Submitted:  September 15, 2005
Filed:  February 3, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jeffrey Bordeaux was found guilty by a jury of conspiracy to distribute fifty grams or more of a mixture or substance containing methamphetamine, possession of methamphetamine, and carrying a firearm during the course of, and in relation to, a drug trafficking conspiracy. The district court[1] imposed a sentence of sixty-eight

_____

[1] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

months for conspiracy, twelve months for possession, to be served concurrent with the conspiracy conviction, and sixty months for carry a firearm, to be served consecutive to other two counts. Bordeaux appeals, challenging the sufficiency of the evidence, the district court's denial of Bordeaux's motion for a mistrial, the district court's refusal to grant judicial immunity, and the district court's refusal to strike specific portions of witness testimony. We affirm.

I. Background

On December 9, 2003, Trooper Jeff Twite of the South Dakota Highway Patrol stopped a vehicle heading east on South Dakota Highway 44 in excess of the legal speed limit. At the time of the stop, Bordeaux was in the driver's seat. Tammy Rolof was a passenger in the front seat.[2]

During the stop, Trooper Twite noticed that Bordeaux had a film canister in his pocket. Trooper Twite asked Bordeaux to hand over the canister. Bordeaux became agitated and combative.[3] Bordeaux tossed the contents of the canister onto the road and surrounding area and then threw the empty canister at Trooper Twite. During this incident, Tammy Rolof, the passenger, remained in the vehicle. The one time she left the vehicle, Trooper Twite told her to return to the vehicle and she complied. After struggling with Bordeaux, Trooper Twite subdued Bordeaux with the assistance of a passerby.

---

[2] When asked for identification, Bordeaux initially provided Trooper Twite with a false identification card with the name of Damon Angelo Bordeaux. It was later determined that the driver's actual name was that of the appellant-defendant, Jeffrey Bordeaux.

[3] Trooper Twite testified that he and Bordeaux circled the vehicle, with Bordeaux repeatedly telling Twite to "behave." Bordeaux testified that at the time he had been up for most of the previous eight days on methamphetamine.

After subduing Bordeaux, Trooper Twite attempted to collect the objects tossed by Bordeaux. He picked up five baggies, two containing cocaine and three containing methamphetamine. A subsequent search of the vehicle revealed more baggies, a scale, .38 and .40 caliber firearms, and marijuana.

At trial, a number of witnesses testified regarding their association with Jeffrey Bordeaux. The government's principal witness was Tammy Rolof. Rolof testified that she purchased drugs from Jeffrey Bordeaux and his brother Jason through her roommate Ms. Gallegos, also known as "Raven." Rolof stated that she purchased drugs directly from Jeffrey Bordeaux in front of the brothers' house in excess of ten times. After Rolof and Gallegos had a falling out, Rolof began spending more time at the Bordeaux residence, acting as a "doorman." In this role, she observed additional transactions between various people and Jeffrey Bordeaux. Rolof further testified that she got to know an individual known to her as "Negro" through Jeffrey Bordeaux. Although Rolof never directly observed a drug deal between either Jeffrey or Jason Bordeaux and Negro, she testified that there were instances in which the Bordeaux brothers would be out of drugs, Negro would come to the house and leave, and there would be drugs present following his departure.

Other witnesses who testified on behalf of the government included Diana Bald Eagle, Robert Provincial, and Ryan Heenan. These witnesses testified as to their interaction with Jeffrey Bordeaux, which included either purchasing methamphetamine from, or selling methamphetamine to, the Bordeaux brothers.

At trial, Bordeaux proffered the testimony of Chandra Bordeaux, Ms. Gallegos, Earlene Hayes, and Angie High Elk. These witnesses informed the court of their intention to invoke their Fifth Amendment right against self-incrimination. Bordeaux requested immunity from prosecution for each witness. He argued that the witnesses were entitled to immunity because they would provide testimony that would exculpate him. Bordeaux's request was denied.

Following four days of testimony, a jury convicted Bordeaux of conspiracy to distribute more than fifty grams of methamphetamine and carrying a firearm during the course of, and in relation to, a drug trafficking conspiracy. Bordeaux was also found guilty of simple possession of a controlled substance. Bordeaux now appeals these convictions.

II. Sufficiency of the Evidence

Bordeaux alleges that there was insufficient evidence to sustain his conviction for conspiracy to distribute a controlled substance. "Sufficient evidence exists to support a verdict if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Jiminez-Perez, 238 F.3d 970, 972 (8th Cir. 2001) (quoting Jackson v. Virginia, 433 U.S. 307, 319 (1979)). In resolving the question of whether sufficient evidence exists, we view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992).

To establish the existence of a conspiracy, the government must prove that: 1) there was a conspiracy to distribute a controlled substance; 2) the defendant knew of the conspiracy; and 3) the defendant knowingly participated in the conspiracy. United States v. Pizano, 421 F.3d 707, 719 (8th Cir. 2005). After carefully reviewing the record in the light most favorable to the verdict, we reject Bordeaux's argument that he was merely a methamphetamine addict who acted only in furtherance of his own addiction. Bordeaux's own admissions at trial along with the testimony of Tammy Rolof, Robert Provincial, Diana Bald Eagle, and Ryan Heenan provide sufficient proof that Bordeaux knowingly participated in the conspiracy to distribute methamphetamine.

Bordeaux argues that the testimony of these witnesses is not credible. Determining the credibility of witnesses is the province of the jury. United States v. Sirbel, 427 F.3d 1155, 1159 (8th Cir. 2005). As a result, we give significant weight to the jury's determinations as to the credibility of witnesses. United States v. Cole, 380 F.3d 422, 425 (8th Cir. 2004) ("It is the task of the jury to evaluate the credibility of witnesses."). Bordeaux, like the defendant in Cole, has provided no basis for deviating from this rule. The jury's finding in this case was based on the credibility of witnesses who provided coherent and reasonable testimony, and thus does not support Bordeaux's insufficient evidence argument. Id. Accordingly, we conclude that there is sufficient evidence to support a reasonable juror's finding that Bordeaux conspired to distribute fifty grams or more of a mixture or substance containing methamphetamine.

Bordeaux also alleges that there was insufficient evidence to sustain his conviction for carrying a firearm during the course of, and in relation to, a drug trafficking conspiracy, a violation of 18 U.S.C. § 924(c)(1)(A)(i). Bordeaux argues that he was not "carrying" either firearm. To carry a firearm "means to have on one's person, to transport, to remove, or to convey" the firearm. United States v. McKinney, 120 F.3d 132, 134 (8th Cir. 1997). "[W]hen a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than the defendant's hands or pocket . . . ." United States v. Cardenas, 864 F.2d 1528, 1535-36 (10th Cir. 1989). Bordeaux's own statements regarding the firearm being in the possession of Rolof inside the vehicle are sufficient evidence that he was carrying the firearms. See United States v. Espinosa, 300 F.3d 981, 984 (8th Cir. 2002) (concluding that the existence of a gun in plain view at a passenger's feet is sufficient evidence that the driver was knowingly carrying the firearm for the purpose of protecting a drug transaction).

Bordeaux also argues that even if we conclude that he was "carrying" a firearm, we must conclude that it was not in relation to a drug trafficking offense. "We have long recognized the role of firearms in protecting drugs or drug proceeds." Id. As shown earlier, Bordeaux was on a trip, the purpose of which was to distribute methamphetamine, at the time he was carrying the firearms. Based on the evidence of the purpose of Bordeaux's trip and the presence of the firearms within the vehicle, the jury could reasonably conclude that Bordeaux was carrying the firearms as part of his conspiracy to distribute methamphetamine. Id. As such, Bordeaux violated 18 U.S.C. § 924(c)(1)(A)(i) by "carrying" the .38 and .40 caliber firearms "in relation to" a drug trafficking offense.

III.  Motion for Mistrial

Bordeaux alleges that the district court erred in refusing to grant a mistrial after the government violated an order to present the film canister and baggies of cocaine and methamphetamine as individual items of evidence, rather than as one exhibit. The district court has the discretion to decide whether the government's actions so tainted a trial that a mistrial should be declared. See United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005). Accordingly, the district court's decision is reviewed for an abuse of discretion. Id. Even if the manner in which the evidence was presented was improper, the district court took prompt remedial action when it had the exhibits re-numbered before the jury and admitted separately. Further, the jury had already heard that the film canister and baggies were found separately. Trooper Twite had testified that "when [Bordeaux] threw [the film canister] at me, it was empty at that time." As such, the jury was aware that any collective packaging shown to the witness was done by the person collecting the evidence. Therefore, there is no reasonable basis to conclude that the government's actions improperly tainted the jury's deliberations.

-6-

## IV. Immunity from Prosecution for Material Witnesses

Bordeaux further alleges that the district court erred when it refused to grant immunity from prosecution to Chandra Bordeaux, Ms. Gallegos, Earlene Hayes, and Angie High Elk. "The Eighth Circuit has consistently refused to recognize the concept of 'judicial' immunity." United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003). However, we have stated that a grant of immunity should be used as an "extraordinary remedy to be used sparingly and then only where the proffered evidence is clearly exculpatory." United States v. Kehoe, 310 F.3d 579, 591 (8th Cir. 2002) (internal quotations omitted).

Bordeaux contends that his witnesses were entitled to immunity from prosecution because their testimony was exculpatory. We disagree. The record does not suggest that the testimony of the four witnesses would have been "clearly exculpatory." Rather, the testimony of three of the four witnesses would have merely suggested alternate possible motives for Bordeaux's travels. The testimony of the fourth witness, Ms. Gallegos, also would not have clearly exculpated Bordeaux. On the contrary, Gallegos stated in discovery that she might have inculpated Bordeaux by suggesting that Bordeaux was selling methamphetamine for Tammy Rolof. Accordingly, the district court's decision to not grant judicial immunity did not constitute error.

## V. Pretrial Order

Prior to trial, Bordeaux filed a motion in limine seeking to prohibit the government from eliciting testimony from any witness that any agreements they signed required them to be "truthful." The district court granted the defendant's motion, prohibiting the government "from leading the jury to believe that the government may know something that the jury does not about the veracity of the witnesses." During the testimony, on redirect of Robert Provincial, the government

asked, "do you understand, sir, that the immunity you got for that proffer agreement, in that immunized statement defense counsel has talked about, do you understand that if you were not completely truthful, that immunity agreement does not protect you?" The government then asked a series of follow-up questions regarding the limitations of Provincial's agreement. At trial, Bordeaux did not raise an objection. Therefore, we review for plain error. United States v. Cotton, 535 U.S. 625, 631 (2002). In this case, Bordeaux has failed to meet his burden of showing that any error in failing to strike this series of questions and answers rose to the level of plain error. Bordeaux has not demonstrated that any error, if one occurred, affected his substantial rights such that it brought into question the integrity of the trial. Accordingly, we conclude that the district court's failure to strike the government's questions and the witnesses' answers does not constitute plain error.

VI. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____