# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1673

_____

United States of America

*Plaintiff - Appellee*

v.

Dijon Rasheed Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 14, 2019
Filed: July 16, 2019

_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

Dijon Rasheed Brown was convicted of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), for his involvement in a drug distribution

operation.[1] Police arrested Brown after conducting a controlled delivery of a methamphetamine-filled package addressed to the duplex where Brown was staying. Brown raises several issues on appeal in connection with his arrest and trial. Specifically, Brown argues that the district court[2] erred in (1) denying his motion to suppress the evidence collected as a result of the controlled delivery; (2) denying his motions for judgment of acquittal on both the conspiracy and possession with intent to distribute charges; (3) admitting certain photographs of him at trial; and (4) denying Brown a two-level minor role reduction at sentencing. We disagree, and we affirm the district court in all respects.

## I. *Background*

In September 2015, Zachary Fennell was robbed at 4262 Santa Barbara Dr. in Columbia, Missouri ("the residence"), a duplex rented by his girlfriend, Melissa Guerra. Fennell was a drug dealer. He received methamphetamine from California through the mail at various addresses and then distributed the methamphetamine to others in the Columbia area for sale; Fennell's neighbors, Jeremy and Stephanie Maxwell, sold methamphetamine for Fennell. The men who robbed Fennell in September attacked him and stole drugs, money, and guns. Soon after the robbery, three men arrived from California and began staying with Fennell. One of these men was Brown.

Then, in October and November 2015, postal inspectors identified several suspicious packages being mailed from the Los Angeles, California area to various Columbia, Missouri addresses. In early November, postal inspectors identified a package from the Los Angeles area addressed to "Martha Guerra" at the residence as

---

[1]Brown was also convicted of being a felon in possession of a firearm, but that conviction is not at issue in this appeal.

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

suspicious. Postal Inspector Christopher Farmer obtained a warrant for the package and discovered about 456 grams of methamphetamine inside. Inspector Farmer removed 356 grams from the package, leaving 100 grams inside.

Inspector Farmer then submitted an affidavit in support of an anticipatory search warrant for the residence. In his affidavit, Inspector Farmer explained that he had discovered about 456 grams of methamphetamine inside the package but that he had reinserted about 100 grams for the purpose of a controlled delivery. The affidavit also explained that the controlled delivery would be performed by a law enforcement agent wearing a United States Postal Service uniform. Specifically, the affidavit provided: "Delivery will be made only to an adult willing to accept delivery on behalf of 'Martha Guerra,' to whom the Subject Parcel is addressed. Every effort will be made to make delivery to 'Martha Guerra' and in no event will the package be delivered to a child." *United States v. Brown*, No. 2:15-cr-04067-SRB, 2017 WL 3275970, at *4 (W.D. Mo. July 21, 2017), *report and recommendation adopted*, No. 2:15-CR-04067-SRB, 2017 WL 3275719 (W.D. Mo. Aug. 1, 2017). Based on the contents of the package, Inspector Farmer believed there was a fair probability of drug activity on the premises. A magistrate judge agreed and issued an anticipatory warrant for the premises. The warrant included a "triggering event," providing that probable cause to search the residence would be established once "[a]n adult subject transport[ed] some or all of the methamphetamine inside the target address." *Id.* The warrant also included a notice providing that the "warrant shall be executed only after this act occurs. Otherwise, this warrant shall not be executed." *Id.*

Law enforcement scheduled the controlled delivery for November 10. Officers surveilled the residence prior to and during the delivery, and at 9:55 a.m., they observed Brown and another male entering an SUV parked in front of the residence. At 10:04 a.m., an undercover officer attempted delivery at the front door and then left the package near the front door. Inspector Farmer, who was on scene during the controlled delivery, "observed an individual inside of the residence opening and

closing the door several times as if they were looking at the package." Trial Tr., Day 1, at 42, *United States v. Brown*, No. 2:15-cr-04067-SRB (W.D. Mo. Apr. 13, 2018), ECF No. 520. At 10:31 a.m., the SUV drove past the residence, then returned and parked in the driveway. At trial, Inspector Farmer described this activity as "a heat run, which is a countersurveillance maneuver employed by individuals involved in criminal activity to scout for and look for the location of law enforcement in the area." *Id.* at 42–43. At 10:34 a.m., Brown and another man exited the vehicle and approached the residence. Brown then picked up the package and took it inside the residence.

Once Brown brought the package inside, Inspector Farmer alerted the officers that the triggering event had occurred. Within two minutes of Brown bringing the package inside, Fennell brought the package back outside onto the front doorstep and left it there. Officers soon entered the residence through the back door after being unable to breach the front door. Brown and others attempted to flee. Brown was later found hiding inside a nearby shed. After execution of the warrant, officers discovered that Brown had written "Return to Sender" on the package before placing it back on the doorstep.

During their search of the residence, officers discovered evidence of drug trafficking, including several weapons, a drug ledger, and incriminating text messages. Specifically, they discovered a loaded handgun under a bed in Brown's bedroom; a piece of paper with the initials "LT" written on it along with drug quantities and prices (later determined to be a drug ledger); and a text message associated with LT's phone number instructing someone to purchase drugs. Brown's DNA was found on the gun under his bed, and testing also suggested his DNA was on at least one other gun found inside the residence.

Subsequently, Brown was indicted for conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine;

Fennell, Guerra, and other coconspirators were also indicted. Prior to trial, Brown moved to suppress the evidence recovered during the November 10 raid. Brown argued that the anticipatory warrant was not supported by probable cause and that the triggering event to execute the warrant never occurred. The district court denied his motion. The court found the triggering event occurred when Brown brought the package inside the residence. It also found that even if the triggering event did not occur, law enforcement relied on the warrant in good faith. Brown also filed a motion in limine to exclude any evidence of his gang affiliation. The district court granted Brown's motion in part, instructing the government not to mention gang affiliation; however, the court allowed the government to introduce certain pictures of Brown, Fennell, and other codefendants.

At trial, the government argued that Brown had moved from California to assist Fennell with his drug distribution operation, specifically noting Brown's role in providing protection to Fennell after he had been robbed. The government called several witnesses, including Inspector Farmer, FBI Agent Stacy Banks, Guerra, a female client named Jessie Benedict, and Jeremy Maxwell. During Agent Banks's testimony, the government introduced several pictures of Brown, Fennell, and the other codefendants for the purpose of establishing the relationship among these individuals. Brown claimed these pictures were prejudicial because they allegedly depicted certain gang signs, and he objected to their introduction. However, the government made no mention of gangs or gang affiliation during the trial. Guerra identified Brown as "Little T" and also testified to seeing guns "[e]verywhere" when she visited the residence. Trial Tr., Day 2, at 143, *United States v. Brown*, No. 2:15-cr-04067-SRB (W.D. Mo. Apr. 13, 2018), ECF No. 521. Benedict stated that Brown sometimes accompanied Fennell when Fennell sold her drugs; she also described an occasion when Brown used her property for target practice. Maxwell testified that, on one occasion, Brown provided Fennell with methamphetamine.

At the close of the case, Brown moved for a judgment of acquittal, arguing that the evidence was insufficient to find him guilty beyond a reasonable doubt of either charge. The district court denied Brown's motion, and the jury found Brown guilty of both conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine.

At sentencing, the district court calculated Brown's Guidelines range as 210 to 262 months' imprisonment, a range reflecting an offense level of 34 and a criminal history category of IV. Brown moved for a two-level minor role reduction, but the court denied the motion after finding that Brown played a "more than [a] de minimis role" in the drug conspiracy. Sent. Tr. at 9, *United States v. Brown*, No. 2:15-cr-04067-SRB (W.D. Mo. Apr. 16, 2018), ECF No. 526. The district court ultimately sentenced Brown to two concurrent 188-month sentences.

## II. *Discussion*
### A. *Anticipatory Search Warrant*

Brown contends the district court should have suppressed the evidence uncovered during the search of the residence, as the anticipatory warrant allowing the search was not supported by probable cause and not properly executed. "We review the denial of a motion to suppress de novo but review the underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." *United States v. Walker*, 324 F.3d 1032, 1036 (8th Cir. 2003) (internal quotations omitted).

### 1. *Probable Cause*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." To find probable cause to issue a warrant, the issuing magistrate must determine that, in light of all the circumstances set forth in the affidavit, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir. 1993) (internal quotation omitted). The Supreme Court has upheld the constitutionality of anticipatory warrants. *United States v. Grubbs*, 547 U.S. 90, 96 (2006) ("Anticipatory warrants are . . . no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed.").

> We review the district court's determination of probable cause [to issue an anticipatory warrant] under a clearly erroneous standard, and give considerable deference to the issuing judge's determination of probable cause. We affirm the district court's decision unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made. An anticipatory search warrant should be upheld if independent evidence shows the delivery of contraband will or is likely to occur and the warrant is conditioned on that delivery.

*Walker*, 324 F.3d at 1038 (cleaned up).

Brown argues that the evidence presented to the magistrate judge in the affidavit "failed to recite any facts indicating that an occupant or owner of the Residence was engaged in any criminal activity." Appellant's Br. at 21. As support, he notes Inspector Farmer's admission "that the affidavit was premised solely on the package itself." *Id.* Brown then incorrectly implies that the package and its contents could not support a finding of probable cause to issue an anticipatory warrant without additional evidence of criminal activity at the residence.

This argument is contrary to our decision in *Walker*, where we upheld an anticipatory warrant issued on near-identical grounds. *See* 324 F.3d at 1038. Brown attempts to distinguish *Walker* by noting that the package in *Walker* was addressed to an alias of the target residence's occupant and was personally accepted by that occupant. *Id.* at 1036. However, officers in *Walker* only discovered evidence that the occupant had used the alias *after* searching the target residence, *id.* at 1036, making that distinction irrelevant in assessing the existence of probable cause *before* the search. And, the fact that the suspect in *Walker* accepted the package in person would go not to whether probable cause existed to issue the warrant but to whether the warrant was properly executed. *See Tagbering*, 985 F.2d at 950.

The magistrate judge in the instant case issued the anticipatory warrant for the residence on the understanding that (1) a package containing a significant amount of methamphetamine had been addressed to the residence, and (2) the warrant would not be executed until officers performed a controlled delivery. As in *Walker*, the use of the mail system to deliver illegal drugs to a specific address provided sufficient evidence to support issuance of an anticipatory warrant to search the target residence. Therefore, the district court did not err in finding the warrant was supported by probable cause and in declining to suppress the evidence on the grounds that the warrant was improperly issued.

## 2. *Proper Execution*

"Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" *Grubbs*, 547 U.S. at 94. Occurrence of the triggering condition establishes the requisite connection between "the item described in the warrant" and "the searched location." *Id.* If an anticipatory warrant is executed before the triggering event occurs, "then suppression may well be warranted for that reason." *Tagbering*, 985 F.2d at 950.

Brown contends the warrant was improperly executed, relying on Inspector Farmer's statement in his affidavit that officers would deliver the package "only to an adult willing to accept delivery." *Brown*, 2017 WL 3275970, at *4. Though the warrant itself contained no such condition, Brown argues the affidavit and warrant must be read together to formulate a sufficiently specific triggering event. Since the package was not unconditionally accepted—but rather, placed back outside the residence with instructions to "Return to Sender"—Brown argues the triggering event never occurred and the requisite relationship between the package and the residence was never established. Brown thus claims the evidence seized during the officers' search of the residence must be suppressed.

However, even if Brown is correct that the triggering event did not occur, suppression of the search results is unwarranted.

> When officers have relied upon a subsequently invalidated search warrant, *Leon* permits admission of the seized evidence unless "the magistrate abandoned his detached and neutral role" in issuing the warrant, or "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."

*Tagbering*, 985 F.2d at 951 (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)).

Brown argues the officers could not reasonably have believed probable cause existed to execute the warrant after the package was placed back outside. However, there is nothing to indicate that the officers unreasonably relied on the warrant. Even if the warrant should have been more narrowly tailored, the text of the warrant itself only specified transportation of the methamphetamine inside the residence—an act which all parties agree occurred. Furthermore, Inspector Farmer testified that the officers did not realize "Return to Sender" had been written on the package until *after*

they executed the warrant. Finally, officers observed Brown and his coconspirators engaging in suspicious behavior before Brown brought the package into the residence, strengthening their belief that they had probable cause to execute the warrant.

Because the officers relied on the warrant in good faith, the district court did not err in failing to suppress the evidence on the ground that the officers lacked probable cause to execute the warrant.

## B. *Sufficiency of the Evidence*

Under Rule 29(a), a court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. This court reviews the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. A court should not weigh the evidence or assess the credibility of witnesses. The standard is very strict, and this court will reverse the conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt.

*United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008) (cleaned up).

### 1. *Conspiracy to Distribute*

"To establish the existence of a conspiracy, the government must prove that: 1) there was a conspiracy to distribute a controlled substance; 2) the defendant knew of the conspiracy; and 3) the defendant knowingly participated in the conspiracy." *United States v. Bordeaux*, 436 F.3d 900, 903 (8th Cir. 2006).

Brown argues that the evidence was insufficient to establish the elements of conspiracy and challenges the district court's decision to deny his motion for

judgment of acquittal. Brown particularly challenges the credibility of witness Jeremy Maxwell, who claimed he observed Brown engage in a drug transaction. However, "[d]etermining the credibility of witnesses is the province of the jury. As a result, we give significant weight to the jury's determinations as to the credibility of witnesses." *Id.* at 904 (internal citation omitted). Brown "has provided no basis for deviating from this rule." *Id.*

Furthermore, excluding Maxwell's testimony, the government presented sufficient additional evidence linking Brown to the conspiracy. Inspector Farmer testified to Brown's suspicious behavior during the controlled delivery, including the "heat run." It was further established that Brown fled the scene after police entered the residence. Inside the residence, officers discovered at least two guns with Brown's DNA, one of which was hidden under Brown's bed. This discovery, along with Guerra's testimony that there were guns throughout the house and Benedict's testimony that Brown had used her property for target practice and accompanied Fennell when Fennell sold her drugs, supported the government's claim that Brown was providing protection to Fennell and his drug operation. Officers also discovered a drug ledger bearing Brown's street name, "LT," and a text associated with LT's number referencing a drug transaction; Guerra identified Brown as "Little T" at trial.

In light of this evidence, we conclude the district court did not err in denying Brown's motion for a judgment of acquittal on the conspiracy charge.

### 2. *Possession with Intent to Distribute*

> To sustain a conviction for aiding and abetting with intent to distribute drugs, the government must prove: (1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed.

*Santana*, 524 F.3d at 853 (quoting *United States v. McCracken*, 110 F.3d 535, 540 (8th Cir. 1997)).

Brown argues the evidence was insufficient to convict him of possession with intent to distribute, claiming that he "never knowingly possessed 50 grams or more of methamphetamine." Appellant's Br. at 38. Brown claims he was not aware that the package he picked up and brought inside the residence contained 100 grams of methamphetamine. Brown's argument fails, because "in an aiding-and-abetting case, the government is not required to prove that the defendant possessed the controlled substance" and "knowing possession . . . is not an element of aiding-and-abetting." *Santana*, 524 F.3d at 854.

As discussed in Part II.B.1, the evidence presented at trial supported the government's theory that Brown was assisting Fennell with his drug distribution operation. The evidence presented at trial also supported the government's argument that Fennell directed a drug distribution operation. To the extent that Brown protected and supported Fennell, Brown "associated himself with [an] unlawful venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed"—regardless of his knowledge about the package's content. *Id.* at 855. Furthermore, the government presented evidence to suggest that Brown *knowingly* possessed the 100 grams of methamphetamine inside the package. Most relevantly, Inspector Farmer testified to Brown's "countersurveillance maneuver" after the package was left on the doorstep; this maneuver suggests Brown was aware of the package's content. Trial Tr., Day 1, at 42.

In light of this evidence, we conclude the district court did not err in denying Brown's motion for a judgment of acquittal on the possession with intent to distribute charge.

## C. *Photographs*

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. We review a challenged Rule 404(b) decision for abuse of discretion and reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.

*United States v. Payne-Owens*, 845 F.3d 868, 872 (8th Cir. 2017) (internal quotations omitted).

"We recognize [that] . . . general evidence as to gang culture, aimed at simply establishing a violent or lawless culture, is often unduly prejudicial and can be irrelevant." *Id.* at 873 (cleaned up). Therefore, the government may not "relentlessly attempt to convict [a defendant] by arguing guilt by association." *Id.* at 874. However, "[s]pecific and circumscribed evidence of gang association may be necessary in a trial to show the nature and extent of the defendants' association, which in turn bears on whether they conspired." *United States v. Johnson*, 28 F.3d 1487, 1497 (8th Cir. 1994) (cleaned up).

Brown challenges the district court's decision to admit photographs of him socializing with certain coconspirators. He claims the photographs depict gang signs and therefore unfairly prejudiced him; on this basis, he calls for a new trial. Brown's argument is without merit.

Prior to trial, Brown filed a motion in limine asking the district court to bar the government from presenting evidence of his gang affiliation. The district court granted his motion in part and prohibited the government from raising Brown's gang affiliation. At trial, however, the government moved to introduce certain photographs of Brown and his coconspirators. One photograph shows Brown, Fennell, and other

-13-

coconspirators drinking around a table inside the residence, another shows Brown in a canoe, and a third shows him seated on an airplane. While the photographs do show individuals making hand gestures, there is nothing self-evidently connecting these gestures to gangs in general or any gang in particular, and the government introduced no evidence suggesting such a connection. Neither did the government refer to Brown's gang affiliation at trial. Considering that we have previously upheld a district court's decision to allow testimony *affirmatively* establishing defendants' gang membership, where such membership was not "the entire theme of the trial," *id.* at 1497, Brown's mere speculations about how the jury potentially interpreted the photographs is insufficient to establish prejudice.

The district court did not err in admitting the photographs, and their introduction does not provide a basis for a new trial.

### D. *Minor Role Reduction*

A two-level "minor participant adjustment applies to a defendant who is less culpable than most other participants . . . . Whether a defendant played a minor role is a question of fact reviewed for clear error. The burden of proof rests with the defendant to prove that he played a minor role." *United States v. Bradley*, 643 F.3d 1121, 1128 (8th Cir. 2011) (cleaned up).

> [W]hile relative culpability of conspirators is relevant to the minor participant determination, our cases make it clear that merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense.

*Id.* at 1129 (internal quotations omitted).

Here, the evidence presented at trial suggested that Brown both provided protection to Fennell and his drug trafficking operation and engaged in drug

purchasing and distribution himself. While Brown may have been less involved then other members of the conspiracy, there was sufficient evidence for the district court to find that Brown's role was more than minor. Brown "was an active participant in the conspiracy . . . and therefore the court did not clearly err in determining he was not a minor participant. We affirm the court's rejection of the two-level reduction." *Id.*

### III. *Conclusion*

For the foregoing reasons, we affirm Brown's conviction and sentence.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

The officers who searched the house relied in good faith on a validly issued and facially reasonable anticipatory search warrant, so even if the triggering condition was overly broad and failed to establish probable cause under the unusual facts of this case, Brown is not entitled to suppression. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Livesay*, 983 F.2d 135, 137–38 (8th Cir. 1993). Accordingly, I concur and join all but Part II.A of the court's opinion.

———————————————

-15-