# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3907

_____

United States of America,

*Plaintiff - Appellee,*

v.

Breac A. Stewart,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 17, 2016
Filed: April 17, 2017

_____

Before LOKEN, SMITH[1], and COLLOTON, Circuit Judges.

_____

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on March 11, 2017.

COLLOTON, Circuit Judge.

A jury convicted Breac Stewart of three offenses for his participation in a marijuana trafficking scheme. Stewart appeals the district court's[2] denial of his motion for judgment of acquittal. Because Stewart's convictions are supported by sufficient evidence, we affirm.

I.

A grand jury charged Stewart and his cousin, Hans Schroeder, in August 2014 with three offenses: conspiracy to distribute and possession with intent to distribute 50 kilograms or more of marijuana under 18 U.S.C. §§ 841(a)(1) and 846, conspiracy to launder money under 18 U.S.C. § 1956(a)(1)(B)(i), and racketeering under 18 U.S.C. § 1952. The indictment also included a forfeiture allegation seeking a money judgment for proceeds of the distribution scheme. We recount the pertinent evidence in the light most favorable to the verdict.

At trial, Schroeder testified that he and Stewart had an agreement to traffic marijuana. Stewart would send marijuana from California to Schroeder in Nebraska, and Schroeder would distribute it. According to Schroeder, Stewart sent him one-pound heat-sealed packages through the mail. Stewart mailed Schroeder these packages with increasing frequency from early 2011 through November 2013, sometimes sending two per week.

Schroeder and Stewart also paid two couriers, Christopher Gude and Jordyn Hermsen, to drive money and larger quantities of marijuana from California to Nebraska. Gude testified that he made five or six trips between the fall of 2012 and

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

the spring of 2013, carrying eight to ten pounds of marijuana on the first journey, and approximately twenty pounds on the later trips. Hermsen testified that she made six to eight trips between April and November 2013, carrying at least two or three large duffel bags full of marijuana packages. Schroeder testified that Hermsen and Gude transported approximately the same amount on their respective trips. Gude and Hermsen said that they brought money on two to four trips and gave it to Stewart. After Stewart moved to Omaha in the summer of 2013, he traveled back to California and supplied marijuana that Hermsen drove to Nebraska.

Schroeder testified that he gave Stewart his portion of the profits by various means—through the mail, by driving it or flying with it to California, by wiring it, or by depositing it in a jointly-held bank account. The bank account was in the name of "We Be Lions," a band that Schroeder had managed. Schroeder testified that to conceal the illegal activity, he commingled the marijuana profits with funds from his legitimate sales of glass pipes. Stewart withdrew $103,400 from the We Be Lions account during the relevant period, and he received twenty-nine MoneyGram transfers totaling $64,894.

After the close of evidence, Stewart moved for a judgment of acquittal, arguing that the government presented insufficient evidence for a jury to convict him of any charged offense. The district court denied the motion, and the jury found Stewart guilty on all three counts. The court then entered a preliminary forfeiture order in the amount of $168,294, the combined total amount of drug sale proceeds that appeared in the We Be Lions bank account and the wire transfer records. The court decided to rely on the financial records, rather than extrapolate a forfeiture amount from the quantity and price of the drugs involved, because it determined that the testimony did not provide a "reasonable estimate of the quantity [of marijuana] involved in the conspiracy." At sentencing, the district court adopted its preliminary forfeiture order as the final order and sentenced Stewart to 48 months' imprisonment.

II.

Stewart challenges the sufficiency of the evidence to support the convictions. We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the verdict. The question is whether any reasonable jury could have found Stewart guilty beyond a reasonable doubt. *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016).

On the drug conspiracy count, Stewart contends that there was insufficient proof that he joined a conspiracy to distribute 50 kilograms or more of marijuana. Several witnesses, however, testified about Stewart's role in procuring, packaging, and sending marijuana to Nebraska for distribution. Travel records and business records corroborated the testimony of the couriers. The government presented evidence of the MoneyGram wire transfers sent by Schroeder and other conspirators to Stewart. Schroeder testified that he mailed Stewart money from the marijuana sales via FedEx, and the government corroborated this testimony with evidence of a FedEx shipping label, addressed to Stewart, found during a search of Schroeder's car. Stewart also withdrew funds from the bank account into which Schroeder deposited profits from the marijuana scheme. The evidence here is materially stronger than the proof in *United States v. Hernandez*, 301 F.3d 886 (8th Cir. 2002), where we affirmed a judgment of acquittal on a substantive drug charge because the government failed to prove the defendant's knowledge of the drug trafficking scheme.

Stewart attacks the credibility of the witnesses who implicated him and cites the district court's conclusion that the testimony was not sufficiently reliable to establish a forfeiture amount by a preponderance of the evidence. In the preliminary forfeiture order, however, the district court did "credit[] the testimony that the individuals transported or sold marijuana and/or transported cash." The court just felt that the testimony did not "establish the forfeitable amounts with any particularity." In reviewing the motion for judgment of acquittal, moreover, the court does not assess

-4-

the credibility of the witnesses, because that is the province of the jury. Whatever the district court's view of witness credibility, a reasonable jury was entitled to believe the witnesses who implicated Stewart. Even taking the low end of the quantities estimated by Schroeder and the couriers, the conspiracy involved well more than 50 kilograms of marijuana.

On the money laundering conspiracy, the government was required to establish that Stewart agreed with another to violate 18 U.S.C. § 1956(a)(1)(B)(i). That provision, in turn, requires proof that "(1) defendant conducted . . . a financial transaction which in any way or degree affected interstate commerce . . . ; (2) the financial transaction involved proceeds of illegal activity; (3) defendant knew the property represented proceeds of some form of unlawful activity; and (4) defendant conducted . . . the financial transaction knowing the transaction was 'designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity.'" *United States v. Slagg*, 651 F.3d 832, 844 (8th Cir. 2011) (citation omitted) (quoting § 1956(a)(1)(B)(i)).

The government presented evidence that Stewart and Schroeder used a joint bank account to deposit and withdraw funds derived from the marijuana conspiracy, with transactions occurring in Nebraska and California. To disguise the nature of the funds, the bank account was held in the name of a band, and the marijuana proceeds were commingled with legitimate proceeds from the glass pipe business. This evidence was sufficient to convict Stewart of a money laundering conspiracy.

The racketeering charge required proof that Stewart traveled interstate or used the mail or any facility in interstate commerce "with the intent to carry on or facilitate the carrying on of an unlawful activity and committed an overt act in performing or attempting to perform the unlawful activity." *United States v. Brown*, 956 F.2d 782, 785 (8th Cir. 1992); *see* 18 U.S.C. § 1952(a). Several witnesses testified that Stewart

shipped marijuana and received proceeds of marijuana sales through the mail. Schroeder and Hermsen testified that Stewart traveled from Nebraska to California to arrange for Hermsen to transport loads of marijuana to Nebraska. Stewart also used a cellular telephone to monitor the work of drug couriers who participated in the unlawful activity. There was sufficient evidence to convict Stewart of racketeering.

\*          \*          \*

The judgment of the district court is affirmed.

_____